[No. 41212.    En Banc.    December 10, 1970.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHNNIE CHARLES HARRIS, *Appellant.**

*Webster, Kroum, McCann, Bass & Mack* and *Gary F. Bass,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *C. N. Marshall,* for respondent.

ROSELLINI, J.—Having waived a jury, the appellant was tried by superior court on a charge of burglary and a charge of grand larceny and was found guilty. On appeal, his one assignment of error is directed to the admission of evidence which was the fruit of a search incident to his arrest. He maintains that the arrest was made without probable cause.

The uncontroverted testimony of the arresting officers

*Reported in 477 P.2d 923.

showed the following facts and circumstances surrounding the arrest:

On the morning of February 17, 1969, officers Jolly and Hahn of the King County Department of Public Safety turned eastbound onto Northeast 177th Street from 15th Avenue Northeast in King County, Washington, and as they turned Officer Jolly noticed a pickup truck parked on the north side of Northeast 177th Street. The pickup truck had not been there when the two officers patrolled the area an hour earlier. Officer Hahn, at the time he turned onto Northeast 177th, saw a figure behind the truck make a fast movement and disappear from sight.

The officers approached the truck with their spotlight on it and observed the appellant lying on the ground underneath the rear of the truck. Officer Hahn stopped the patrol car behind the truck and asked the appellant if he was having trouble. The appellant replied that he was having muffler trouble.

The appellant began to "jiggle" the muffler and said, "Now try it," or words to that effect. The officers looked at the front of the truck to see whom the appellant was speaking to, but there was no one in sight. The appellant then came from under the truck and got to his knees, and Officer Jolly left the patrol car to check the front of the truck. As the appellant got to his feet, he picked up a brown leather bag and put it in the rear of the truck. The bag looked heavy and a wooden handle protruded from it. Officer Hahn immediately thought it was the handle of a sledge hammer.

The appellant asked the officers to call a tow truck, saying that he must have blown a rod. "A rod in the rear of your truck?" Officer Hahn asked.

At this point, Officer Jolly returned from checking the front of the truck. As he had done this, he had heard a rustling noise in a hedge beside which the truck was parked. As Officer Jolly reached the rear of the truck, the appellant was walking toward him. Officer Jolly observed a bulge in the appellant's pocket. He "took hold" of the appellant and asked him to go over by the patrol car. The

appellant hesitated, and the officer took both of his hands and shoved them in the air and told him to leave them up. He "pat searched" the appellant and found a weapon in his pocket. He placed the appellant under arrest.

Officer Jolly told Officer Hahn to look behind the hedge because he had heard a noise there. A man was found lying, face down, behind the hedge. This man was also placed under arrest and the officers searched the truck, with the aid of other officers who had responded to their radio call.

That search disclosed evidence that the appellant had participated in a recent burglary. It was later discovered that a nearby restaurant had been burglarized that night. The items found in the truck were items which had been taken in that burglary.

Prior to the arrest, the officers did not know that there had been a burglary in the neighborhood. They did know that there had been a number of burglaries in recent months.

Officer Jolly testified that he searched the appellant for his own safety and that of his partner, and that when he arrested the appellant, he believed that he was involved in "some type of burglary or suspicious activities. I didn't know what at the time. But I found him out there in that early hour, and with a weapon in his pocket, and telling me a story that didn't stack up. So I placed him under arrest."

The appellant earnestly contends that the arrest was made upon mere suspicion and not upon probable cause. However, he concedes that what may be probable cause to a police officer may not be probable cause to a layman. He contends that the police officer's special experience and knowledge should not be considered in determining whether there was probable cause.

■ The law does not support the appellant's theory. The rule, as we recently announced it in *State v. Todd*, 78 Wn.2d 362, 365, 474 P.2d 542 (1970), is as follows:

In order to be justified in arresting without a warrant, an officer must believe and must have good reason to believe that a person has committed or is about to com-

mit or is in the act of committing a felony. Not only must the officer have a real belief that the person is guilty, but that belief must be based upon reasonable grounds. Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.

In that case, the arrest was made by an officer who had been alerted to watch for three men of the defendants' descriptions proceeding in a certain direction by automobile. The automobile did not exactly fit the description of the escape car which had been radioed to the arresting officer, but we held that he was entitled to take into account the fact that only a fleeting glimpse was probably had of it by the observer and also the fact that fleeing felons are known to change cars at times. Holding the arrest lawful, we said that probable cause for arrest should be examined in the light of the arresting officer's special experience and that the standard should be not what might appear to be probable cause to a passerby, but what would be probable cause to a reasonable, cautious and prudent officer. This, as we noted there, is the rule earlier laid down by this court in *State v. Poe*, 74 Wn.2d 425, 445 P.2d 196 (1968).

We think there can be little doubt that the arresting officers in this case proceeded in a reasonable, cautious and prudent manner. While their suspicions were alerted by the darting movement seen at the rear of a truck which they knew had not been parked where it was an hour earlier, they gave the appellant an opportunity to explain the presence of the truck and his position under it. The explanation he gave would certainly have aroused the suspicions of anyone having the most casual knowledge of the mechanism of a motor vehicle. The explanation which he expected the officer to accept was that the truck would not run because there was something wrong with the muffler. He compounded the mystery by addressing an admonition to a person who was not in the cab of the truck, where he would be expected to be if he was indeed trying to start it.

Apparently recognizing the absurdity of his explanation of his circumstances, the appellant attempted another explanation, that he must have "blown a rod" in the rear of the truck. The officer also recognized this as patently absurd.

What was the officer, as a reasonable man, to think? That the appellant was totally ignorant of the mechanism of a truck, or that he was hiding under the truck, having seen the patrol car approaching? And what of the mysterious person to whom the appellant was addressing an admonition to "try it now?" Had he not also ducked out of sight? A rustling sound in the hedge by the truck gave strength to this supposition. When it further appeared that the appellant might be carrying a weapon, and a frisking revealed that indeed he was, the only reasonable conclusion which the officer could reach was that the appellant and an accomplice were engaged in some unlawful conduct. Since that conduct involved the truck—neither of them appearing to want to be found in it—it was logical to assume that either the truck had been stolen or it contained some incriminating evidence. The bag which the appellant had placed in the truck, which gave the impression of heaviness, had a handle sticking out of it, like the handle of a sledge hammer, and the officer was certainly justified in suspecting that it contained burglary tools.

When it is considered that the officers were patrolling with the knowledge that there had been a number of burglaries in the area, in fact that the incidence of burglaries is increasing in the city at an alarming rate, that the officer was familiar with the tools and methods of burglaries, that the hour was an appropriate one for a burglary and the appellant offered an obviously false explanation of his situation, it must be concluded that the arresting officer was justified in believing that the appellant had committed the crime of burglary.

He was not certain of it and it was not necessary that he be convinced beyond a reasonable doubt, but he did think that the appellant had committed or was in the act of committing a burglary. Such a belief, having a reasonable

basis in the facts and circumstances known to the officer, is all that the law requires.

We are convinced that the arrest was legal and that the evidence was properly received.

The judgment is affirmed.

ALL CONCUR.