**STATE of Utah, Plaintiff and Respondent,**

v.

**William Clifford BARTLEY and Jay Charles Wade, Defendants and Appellants.**

**No. 880375–CA.**

Court of Appeals of Utah.

Dec. 20, 1989.

---

Lyle R. Anderson, Monticello, for defendants and appellants.

R. Paul Van Dam and Barbara Bearnson, Salt Lake City, for plaintiff and respondent.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BENCH, Judge:

Defendant William Clifford Bartley appeals from his conviction of theft, a third degree felony, in violation of Utah Code Ann. §§ 76-6-404, -412(1)(b)(i) (1978). We affirm.

## FACTS

The southeastern portion of San Juan County is a sparsely-populated area consisting largely of farms, ranches, and oil and gas wells. The county sheriff's office had received reports for several months in late 1986 that "drip gas" thefts were occurring in the area. Drip gas, also known as "gas condensate," is a liquid byproduct condensed from gas and stored at the wellhead for eventual sale to pipeline companies. Unrefined drip gas is clear in color and rank in odor, and may be used as a fuel or cleaning solvent.

On December 26, 1986, at 11:06 p.m., a report was made to the sheriff's office that there were three pickup trucks with trailers and portable liquid storage tanks traveling into Patterson Canyon, an area of producing oil wells. Sheriff S. Rigby Wright and Deputy Sheriff Jack Kirby proceeded to the area to investigate. At the

entrance to Patterson Canyon, they met with two oilfield workers who provided a description of the three vehicles. The two officers then drove into the canyon to a point at which they could see a couple of miles down the road. At approximately 12:30 a.m., they parked in the middle of the gravel roadway and waited. Fifteen or twenty minutes later, the officers observed three sets of headlights approaching. The sheriff instructed Kirby to use his vehicle's red stoplight to stop the approaching vehicles when they were near enough, and then the sheriff walked up the road to wait for them.

The first vehicle stopped was a pickup truck with a liquid storage tank on its bed and three tanks on a trailer. The sheriff testified that the vehicles were "lugged down" and moving slowly as if heavily laden. He also said that he smelled the rank odor of drip gas. The driver, later identified as co-defendant Jay Charles Wade, got out and was told to secure his vehicle and walk up to the police car. A few moments later, a second pickup truck drove up and stopped. It was pulling a large tank and trailer unit. The driver, later identified as the defendant, got out, tucked something into the front of his pants, and began walking toward the police car. The sheriff, shotgun in hand, came up behind defendant and told him to keep his hands in view. Both men were frisked, handcuffed, and placed in the police car. A .38 caliber revolver was found in the waistband of defendant's pants during the frisk.

The sheriff soon realized that the third vehicle had turned and fled. The officers, with the two suspects in tow, unsuccessfully searched for the third vehicle for almost an hour. Eventually, the officers met again with the two oilfield workers, who led them to a nearby drip gas collection site. There were various signs that a drip gas storage tank owned by Wintershall Oil & Gas had been drained. The ground was wet with water and paraffin, two substances that must frequently be drained off stored drip gas. The site was also crisscrossed with fresh tire marks and footprints and smelled strongly of drip gas.

On the storage tank itself, the officers found an unauthorized seal on one of the two discharge valves. A similar seal was later found in defendant's truck.

The officers then returned to the scene of the arrests and impounded the two trucks and trailers. The sheriff opened the valve on one tank and a liquid squirted out similar in appearance and smell to drip gas. The two suspects were transported to jail and their shoes and outer clothing, which gave off an odor of drip gas, were impounded as evidence. The vehicles and trailers were stored in an impound yard. Later that morning, the sheriff plumbed the confiscated tanks and determined that two of the five tanks were full of drip gas, one was almost full, and two were empty.

A jury trial was conducted on April 12 and 13, 1988. A witness for the State testified that he saw three pickup trucks with trailers and tanks driving toward the oil field at about 10:30 p.m. on the night of the theft. When the vehicles passed him, he heard the tanks rattle as if they were empty, and could smell no odor. The contractor who maintained the Wintershall site placed the value of the stolen drip gas at $929.50. He also testified that he was aware of legitimate drip gas transfers in the area, knew of none that would have occurred the night in question, and, in any event, stated that no one could have lawfully drained the tank without his approval. He further stated that the smell of drip gas from the Wintershall site was unique, and matched the odor of gas in the tanks confiscated from defendants.

A state criminologist testified that samples of drip gas residue taken from the Wintershall tank and samples taken from residues on defendant's clothing were chemically evaluated and were found to be comparable. Tire marks and footprints at the scene of the theft were also found to be consistent with defendants' vehicles and footwear.

Defendants refuted the State's evidence by claiming that the impounded gas had been legally obtained elsewhere. Wade's uncle testified that he had traded defen-

1234

dant the fuel for a truckload of wood. Although defendant did not testify, Wade told the jury that defendant had picked up the fuel and had asked him to help move it. Wade testified that they were in the process of transporting it when they were stopped by the sheriff.

The jury subsequently convicted both defendants of theft of drip gas valued at more than $250 and less than $1,000.

## THE STOP OF DEFENDANT'S VEHICLE

■ Defendant first asserts that the "roadblock" which led to the seizure of evidence and his subsequent arrest was not of the variety approved in dicta in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), nor for a demonstrable emergency, and was, therefore, illegal.

Defendant mischaracterizes the stop of his vehicle. The record plainly indicates that this was not a random stop or checkpoint designed to screen vehicles for unsuspected illegal activity such as violations of safety, licensing, immigration, or wildlife conservation laws. Nor was it designed to capture escaped prisoners or felons fleeing from the police. Rather, it was designed to effectuate an investigative stop of three suspicious vehicles in an isolated area.[1] When making such a stop, "officers may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo' so that the limited purposes of the stop may be achieved." *United States v. Jones*, 759 F.2d 633, 636–37 (8th Cir.1985) (quoting *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 684, 83 L.Ed.2d 604 (1985)), *cert. denied*, 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985).

We find no particular significance in the fact that this stop was accomplished by means of a "roadblock" rather than by some other method. The blockade of a suspect vehicle "generally will be reasonable ... because of the chance that the suspect may flee upon the approach of

police with resulting danger to the public as well as to the officers involved." *Jones*, 759 F.2d at 638. In this case, there existed the potential of at least several suspects, limited numbers of present and available law enforcement personnel, and a significant risk (later realized) that the suspects were armed. We find nothing unreasonable in the sheriff's selection of the "roadblock" as a means of minimizing the risk of flight or resistance by the suspects.

■ The more important question in this case remains whether the stop of defendant's vehicle was legally justified. The stopping of an automobile and the detention of its occupants constitutes a "seizure" within the meaning of the fourth amendment, *State v. Sierra*, 754 P.2d 972, 975 (Utah Ct.App.1988), and must therefore be supported by at least a reasonable and articulable suspicion, based on objective facts, that the occupants are involved in criminal activity. *State v. Carpena*, 714 P.2d 674, 675 (Utah 1986) (per curiam); Utah Code Ann. § 77–7–15 (1982); *see also State v. Baumgaertel*, 762 P.2d 2, 3 (Utah Ct.App.1988) (those facts may include rational inferences).

Based on the objective facts as articulated by the trial court, we have no doubt that this threshold was passed. The sheriff had knowledge of recent thefts of drip gas in the area and a report that three pickup trucks with empty storage tanks were seen driving into the desolate area in the dead of night. He was also aware that the legitimate transfer of drip gas was usually accomplished by commercial tanker trucks and semitrailers during daylight hours. The sheriff's information was then corroborated by the appearance of three pickup trucks with tanks and trailers, two of which, prior to being stopped, appeared to be heavily laden. We thus conclude that the initial stop was valid under the reasonable suspicion standard.

## PROBABLE CAUSE

■ We now turn to the seizure of the tanks containing drip gas and the arrest of

---

1. This conclusion is supported by the fact that a roadblock for any other purpose would have been senseless in view of the sheriff's testimony that only one unrelated vehicle was observed in the area during the 4–5 hour period following defendant's arrest.

defendant resulting from that seizure. A search and seizure conducted without a warrant is unreasonable per se unless it falls within a recognized exception to the warrant requirement of the fourth amendment. *State v. Holmes*, 774 P.2d 506, 510 (Utah Ct.App.1989). Objects in "plain view" constitute one such exception, and may be seized without a warrant if the police officer is lawfully present and the evidence is clearly incriminating. *Id.* This exception encompasses evidence within "plain smell," *see* 1 W. LaFave, *Search and Seizure* § 2.2(a) (2d ed. 1987), there being no reasonable expectation of privacy from the "inquisitive nostrils" of lawfully present officers. *United States v. Johnston*, 497 F.2d 397, 398 (9th Cir.1974).

In reviewing the requirements of the plain view exception, we have already established that the initial stop of defendant's vehicle was valid, thus making the sheriff's presence lawful. There is also testimony that the odor of drip gas was apparent to the officers, thus establishing that the drip gas evidence could be plainly smelled. We need only to determine whether that odor was clearly incriminating. "Clearly incriminating" is a term which has been defined as "probable cause to associate the property with criminal activity." *Holmes*, 774 P.2d at 510 (quoting *State v. Kelly*, 718 P.2d 385, 390 (Utah 1986)).

Defendant argues that because the sheriff had no actual knowledge that a theft of drip gas had occurred at the time defendant was stopped, "probable cause" for the seizure of the evidence or for his arrest cannot be established. However, officers cannot be expected to begin their investigations only *after* the confirmation of a theft, and frequently develop probable cause prior to such reports. *See, e.g., Dixon v. United States*, 296 F.2d 427 (D.C.Cir.1961) (discovery of fur piece with price tag attached led to arrest for receipt of stolen property); *People v. Carnes*, 173 Cal. App.2d 559, 343 P.2d 626 (1959) (tools and radio led to arrest for laboratory burglary); *State v. Temple*, 7 Or.App. 91, 488 P.2d 1380 (1971) (copper wire in truck led to arrest for theft), *cert. denied*, 406 U.S. 973, 92 S.Ct. 2423, 32 L.Ed.2d 674 (1972); *State v. Ballenberger*, 652 P.2d 927 (Utah 1982) (CB radio on backseat led to arrest for vehicle burglary); *State v. Whittenback*, 621 P.2d 103 (Utah 1980) (tools and coins led to arrest for burglary of laundromat); *State v. Harris*, 78 Wash.2d 558, 477 P.2d 923 (1970) (en banc) (sledgehammer and firearm led to arrest for burglary of restaurant); *State v. Brooks*, 57 Wash.2d 422, 357 P.2d 735 (1960) (unhemmed pants with attached sales tags led to arrest for larceny).

In establishing probable cause, as the term suggests, we deal not in certainties, but in "probabilities." *See Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). The quantum of evidence needed for probable cause is significantly less than that needed to prove guilt. *State v. Ayala*, 762 P.2d 1107, 1112 (Utah Ct.App.1988). Whether probable cause exists "depends upon an examination of all the information available to the searching officer in light of the circumstances as they existed at the time the search was made." *State v. Dorsey*, 731 P.2d 1085, 1088 (Utah 1986). The officer is also "entitled to assess the facts in light of [his or her] experience." *Holmes*, 774 P.2d at 509 (quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975)).

The facts known to the sheriff at the time included: recent thefts of drip gas in the area; the late hour; the infrequently traveled roads; the report of potential theft activity by those with knowledge of legal gas transfers; the presence of trucks with empty tanks headed into the area; the transportation of drip gas by atypical means; the lack of a retail market for the sale of drip gas; and most significantly, the distinctive, if not unique, odor of drip gas—an odor the sheriff testified he recognized from previous investigative work.

Absent clear error, we will not disturb a trial court's factual assessment underlying a decision to deny a motion to suppress evidence. *State v. Droneburg*, 781 P.2d 1303 (Ct.App.1989). "Clear error is indicated when the trial court's factual assessment is against the clear weight of the

evidence or it induces a firm conviction that a mistake has been committed." *Id.* No clear error is indicated here. The officers had reasonable suspicion to stop defendant's vehicle. Once they recognized the distinctive odor of drip gas, that suspicion ripened into probable cause to associate that odor with criminal activity. The requirements of the plain view exception were satisfied, and the evidence could properly be seized without a warrant.

■ We also conclude that defendant's arrest was proper:

An officer may arrest an individual without a warrant either when he has reasonable cause to believe a felony has been committed and that the person arrested committed it or when the officer has reasonable cause to believe the person has committed a public offense and there is a reasonable basis for believing the person will destroy or conceal evidence of the commission of the offense.

*State v. Banks,* 720 P.2d 1380, 1383 (Utah 1986); *see also* Utah Code Ann. § 77-7-2 (Supp.1989). "Reasonable cause" is determined objectively, i.e., "whether from the facts known to the officer, and the inferences which fairly might be drawn therefrom, a reasonable and prudent person in his position would be justified in believing that the suspect had committed the offense." *State v. Cole,* 674 P.2d 119, 125 (Utah 1983) (quoting *State v. Hatcher,* 27 Utah 2d 318, 495 P.2d 1259 (1972)); *see also Banks,* 720 P.2d at 1383.

The officers in this case detected the distinctive odor of drip gas after stopping defendant's vehicle. It is well-established that probable cause for arrest may arise from an officer's sense of smell. *See, e.g., Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436 (1948) (opium); *State v. Valenzuela,* 121 Ariz. 274, 589 P.2d 1306, 1307 (1979) (en banc) (marijuana). Under the circumstances, reasonable and prudent persons could believe that the drip gas had been stolen. As stated previously, the fact that the officers had no specific knowledge that the drip gas was indeed stolen is not critical since "a police officer is not required to meet any

such standard of perfection as to demand an absolutely certain judgment before he may act." *State v. Eastmond,* 28 Utah 2d 129, 132, 499 P.2d 276, 278 (1972) (clear error standard of review).

We conclude that the trial court committed no clear error either in its denial of defendant's motion to suppress or in its finding of probable cause for arrest.

## ADMISSION OF EVIDENCE

■ Over defendant's objection, the court admitted testimony that defendant was carrying a .38 caliber revolver when he was arrested. Similarly, the court permitted the jury to hear testimony that two days after defendant's arrest, the lock and chain on the gate to the sheriff's impound lot had been cut off, and the pickup trucks and trailers seized as evidence were gone. Defendant now argues that the admission of such evidence was erroneous because it was irrelevant and prejudicial.

The State argues that the admission of the firearm evidence was not erroneous on the basis that it was "relevant to explain the circumstances of defendant's crime and arrest." The State does not fully explain this statement, but we note that the admission of evidence of "other crimes, wrongs or acts" may be relevant to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See* Utah R.Evid. 404(b). The record is unclear why the trial court admitted this evidence, but the fact that defendant secreted this firearm on his person immediately prior to his arrest seems relevant to show intent, preparation, plan, or knowledge.

■ The State further defends the admission of testimony regarding the removal of the impounded trucks and trailers as relevant to explain the absence of physical evidence at trial. We agree. The trial judge stated:

So, I don't think you can have it both ways ... that you can argue lack of evidence to convict, and then at the same time restrict the State from explaining why some of the evidence is not here for

the jury's observation.... I'm sure we're going to be getting into values and quantities of the material that was there, which will have to be given probably by estimate rather than actual measurement. And I think the jury is entitled to know why those things are being used.

Although all relevant evidence is admissible, *see* Utah R.Evid. 402, such evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Utah R.Evid. 403. The question of whether the probative value of the evidence is substantially outweighed by its unfair prejudicial effect is "generally entrusted to the sound discretion of the trial judge and will not be upset on appeal absent manifest error." *State in re R.D.S.*, 777 P.2d 532, 535 (Utah Ct.App. 1989) (quoting *State v. Maurer*, 770 P.2d 981, 983 (Utah 1989)).

We see no manifest error. Evidence is unfairly prejudicial if it " 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.' " *Maurer*, 770 P.2d at 984 (quoting *Carter v. Hewitt*, 617 F.2d 961, 972–73 (3d Cir.1980)). The balancing test of rule 403 thus excludes "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Id.* (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979)). In agreement with the trial court's rulings, we conclude that the probative value of the challenged testimony exceeded its prejudicial effect.

**2.** Defendant also claims ineffective assistance of counsel based on his counsel's initial failure to object to the testimony, and the failure to include that issue in his opening appellate brief. Utah has adopted a two-part test for the review of such claims: A defendant must show that his or her counsel performed deficiently such that the performance fell below an objective standard of reasonable professional judgment, and that the performance was prejudicial, such that absent the error, a different outcome was reasonably likely. *State v. Carter*, 776 P.2d 886, 893–94 & n. 30 (Utah 1989); *see also Strickland*

**CROSS–EXAMINATION**

██ We last address an issue first raised not by defendant, but by the State, in adherence to its duty to promote justice. *See State v. Jarrell*, 608 P.2d 218, 225 (Utah 1980). During the course of trial, co-defendant Wade was cross-examined by the prosecutor about his post-arrest silence in explaining his possession of drip gas. An objection was timely made by Wade's counsel, but overruled by the court. The State concedes that the failure by the court to sustain the objection may have impliedly violated this defendant's constitutional right against self-incrimination.[2] *See Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *Griffin v. California*, 380 U.S. 609, 613, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965), *reh'g denied*, 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965); *State v. Tillman*, 750 P.2d 546, 554 (Utah 1987); *State v. Lairby*, 699 P.2d 1187, 1205 (Utah 1984), *rev'd on other grounds*, 739 P.2d 628 (1987). The State further suggests, however, that the error, if any, was harmless beyond a reasonable doubt. *See Tillman*, 750 P.2d at 555 ("[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.") (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)).

Direct reference by a prosecutor to a defendant's decision not to testify is always a violation of the defendant's fifth amendment right against self-incrimination. Indirect references to a defendant's failure to testify are constitution-

*v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The initial failure to object to the testimony may well have constituted deficient performance. *See Lairby*, 699 P.2d at 1205. However, the cross-examination was objected to during trial, and the issue was raised for appellate review, albeit by the State. We therefore cannot conclude that counsel's deficient performance induced a different result. Defendant has not otherwise demonstrated deficient performance in his counsel's representation.

ally impermissible if the comments were manifestly intended to be or were of such a character that the jury would naturally and necessarily construe them to be a comment on the defendant's failure to testify.

*Tillman,* 750 P.2d at 554 (footnote omitted).

In *Tillman,* there was overwhelming evidence of Tillman's guilt, the remarks of the prosecutor were isolated, and the jury was instructed not to draw any adverse presumption from Tillman's failure to testify. *Id.* at 555. Similarly, the circumstantial evidence of defendant's guilt in the instant case was overwhelming, the offensive cross-examination was isolated rather than pervasive, and the judge gave the jury the following curative instruction:

> You are instructed that the Defendant Bartley in this case has not taken the witness stand in his own behalf, and that this is his legal and constitutional right and is not any evidence of his guilt, directly or indirectly, and you are instructed that you are not to consider his failure to testify in this case for any purpose, and [neither] should you allude to such failure in your deliberations or consider it for any purpose whatsoever.

In view of these factors, we hold that any error in defendant's case resulting from the cross-examination of co-defendant Wade was harmless beyond a reasonable doubt.

Defendant's conviction is affirmed.

BILLINGS and ORME, JJ., concur.