**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Brian Keith SPURGEON and Christopher Barry McFarland, Defendants and Appellants.**

**No. 940622–CA.**

Court of Appeals of Utah.

Sept. 28, 1995.

---

Chris D. Greenwood (argued), Greenwood & Black, Provo, for Appellant Spurgeon.

Michael J. Petro (argued), Young & Kester, Springville, for Appellant McFarland.

Todd A. Utzinger (argued), Assistant Attorney General, Jan Graham, State Attorney General, Salt Lake City, for Appellee.

Before BENCH, JACKSON and WILKINS, JJ.

## OPINION

JACKSON, Judge:

Brian Keith Spurgeon and Christopher Barry McFarland appeal their convictions for unlawful possession of a controlled substance with intent to distribute, a second degree felony, in violation of Utah Code Ann. § 58-37-8(1)(a)(iv) (Supp.1995). Spurgeon and McFarland specifically challenge the trial court's denial of their motions to suppress evidence. We affirm.

## FACTS

Legal issues surrounding claimed violations of the Fourth Amendment's search and seizure provisions, particularly legal issues surrounding the existence of probable cause are highly fact sensitive. We therefore recite the facts in detail. *State v. Naisbitt,* 827 P.2d 969, 970 (Utah App.1992).

On January 28, 1994, Sergeant Paul Mangelson of the Utah Highway Patrol observed an older model Mercury four-door on Interstate 15 near Nephi, Utah. The vehicle was traveling seventy-two miles per hour in a sixty-five mile per hour speed zone. As Mangelson pulled behind the vehicle, he noticed a broken taillight. Mangelson later testified that he stopped the vehicle because of the taillight. Mangelson also testified that McFarland, the driver, did not pull over immediately but traveled approximately three or four blocks more than necessary before stopping the vehicle. According to Mangelson, Spurgeon, the passenger, made several furtive gestures and appeared to be hiding something as McFarland stopped the vehicle. Spurgeon later acknowledged that he made the movements that Mangelson described, but Spurgeon testified he was simply looking for the vehicle registration and proof of insurance.

Mangelson approached the vehicle from the passenger side. Mangelson testified that he believed approaching the car from the passenger side increased his personal safety. By the time Mangelson reached the vehicle, Spurgeon already had rolled down the window, and Mangelson immediately detected the distinct odor of burnt marijuana. While speaking with McFarland and Spurgeon

about how fast they were going and about where they had been, the odor persisted. Mangelson eventually told McFarland and Spurgeon that he could "smell pot" and asked them if they had been smoking marijuana. Both McFarland and Spurgeon replied, "no." Mangelson told them the "smell was obvious" and asked McFarland if he could search the car. McFarland responded, "go ahead."

Mangelson had both Spurgeon and McFarland exit the vehicle and patted them down. Before patting down McFarland, Mangelson asked him if he had anything in his pockets or pants. McFarland said, "no," and Mangelson conducted a pat down search. During that search, Mangelson felt a "bulge" toward the back and underneath McFarland's sweat pants. McFarland was wearing a pair of short pants under his sweat pants. Mangelson suspected the bulge was a plastic baggy containing marijuana. Mangelson asked McFarland what it was, but McFarland did not respond. Mangelson then removed the object from McFarland's sweats. The bulge proved to be a plastic baggy containing a white powder. Mangelson again asked McFarland what the object was, and McFarland then admitted that it was cocaine.

Mangelson formally placed McFarland and Spurgeon under arrest and requested backup assistance. He then began to search the vehicle. While searching the car's interior, Mangelson found marijuana fragments, "Zig Zag" rolling papers, and a bottle of Visine eye drops. The rolling papers were significant to Mangelson because he knew that the papers commonly are used for rolling marijuana cigarettes or "joints." The Visine was significant to Mangelson because he knew that marijuana makes users' eyes red and

that users often carry a bottle of Visine to alleviate the condition. Mangelson told Spurgeon and McFarland that he thought there was more marijuana in the car because of the rolling papers and the intensity of the odor. Spurgeon and McFarland then admitted that they had just smoked a joint but said they had thrown it out of the vehicle when they saw Mangelson's patrol car.

Mangelson removed the keys from the ignition and proceeded to search the trunk of the car. Mangelson found two deodorant cans with false bottoms inside luggage that belonged to Spurgeon. Both cans contained marijuana residue. Mangelson also found a brown paper sack stuffed up into the top of the trunk near where the lid hinges into the car's body. The sack contained a plastic bag wrapped in fabric softener sheets. Mangelson unwrapped the package and discovered eight one-ounce bags of cocaine. Both defendants denied knowing that the brown paper sack containing the cocaine was in the trunk. Backup officer Lynn Mackaphee soon arrived, and Mangelson and Mackaphee took Spurgeon and McFarland to the Juab County Jail.

■ Spurgeon and McFarland each filed a pretrial motion to suppress evidence seized during the search of the vehicle as well as evidence seized from McFarland's person. The trial court heard those motions jointly and denied them. Immediately following the trial court's denial of their motions to suppress, Spurgeon and McFarland pleaded no contest to second-degree felony charges, conditional on the outcome of the present appeal. *See State v. Sery,* 758 P.2d 935, 939 (Utah App.1988).[1]

---

1. Spurgeon and McFarland both argue on appeal that the evidence was insufficient to support their conviction. The State correctly responds that defendants waived their right to appeal such issues because they entered conditional pleas of no contest.

   Defendants are procedurally barred from making sufficiency-of-evidence arguments because they waived the appeal of all nonjurisdictional issues other than their specific challenge to the trial court's denial of their motions to suppress. *State v. Smith,* 833 P.2d 371, 372 (Utah App. 1992); *State v. Sery,* 758 P.2d 935, 938 (Utah

App.1988). Upon entering their pleas of no contest, Spurgeon and McFarland waived their right to trial and admitted the elements of the charged offense. Although the defendants' sufficiency-of-evidence arguments may have had some merit had they been introduced at trial, we cannot address them on an appeal from a suppression hearing. *Sery* pleas are not defendants' chance to have their cases tried by an appellate court. The trial court properly accepted conditional pleas of no contest, and we accordingly refuse to consider Spurgeon and McFarland's sufficiency-of-evidence arguments.

## ISSUES

We address two issues on appeal: (1) whether Sergeant Mangelson's stop of the vehicle was justified; and (2) whether Sergeant Mangelson's search of the vehicle and McFarland's person exceeded the constitutional bounds of the Fourth Amendment's search and seizure provisions.[2]

## ANALYSIS

### I. The Stop

Spurgeon and McFarland claim that Mangelson's stop of their vehicle was not justified. The defendants maintain that a discrepancy between Mangelson's testimony that he stopped their vehicle because of a broken taillight and the trial court's finding that the speeding violation justified the stop somehow vitiates the trial court's ultimate determination that the stop was justified.

The State responds that such a discrepancy in the record is inconsequential. The State argues that, even though the trial court did not make an explicit finding that a stop based on the broken taillight would have been proper, the trial court's finding that the speeding violation justified the stop was correct.[3]

We review a trial court's determination of whether a traffic violation was committed in the officer's presence under a clearly erroneous standard. *See State v. Delaney,* 869 P.2d 4, 6–7 (Utah App.1994). We consistently defer to the trial court on matters regarded as "empirical, such as things, events, actions, or conditions happening, existing, or taking place." *State v. Pena,* 869 P.2d 932, 935 (Utah 1994); *see also id.* at 935–36 (discussing rationale for deferring to trial court on questions of fact). On appeal, we will not disturb a trial court's findings regarding traffic violations committed in the

---

**2.** Spurgeon and McFarland also challenge the trial court's finding that Mangelson's search of the vehicle was consensual. Because we resolve questions surrounding the search under the incident to arrest exception of the Fourth Amendment's warrant requirement, we do not reach issues of consent. We pause only to note that our result would be the same if we followed a consent analysis.

Additionally, we do not address Spurgeon and McFarland's claim that the search violated Article 1, Section 14 of the Utah Constitution. A plurality of the Utah Supreme Court has determined that the Utah Constitution requires both probable cause and exigent circumstances in the context of warrantless automobile searches. *State v. Larocco,* 794 P.2d 460, 470 (Utah 1990) (plurality opinion). Moreover, this court previously has noted that "[t]he considerations requiring a showing of exigent circumstances under the automobile exception seem to apply with equal force to the search of a vehicle based on an officer detecting the odor of marijuana." *State v. Naisbitt,* 827 P.2d 969, 973 n. 7 (Utah App.1992). In the present case, however, we do not reach the issue of whether exigent circumstances existed because Spurgeon and McFarland have neither thoroughly articulated "how article I, section 14 should be read more broadly, nor [have they shown] how such a broader reading would result in suppression in this case." *State v. Brooks,* 849 P.2d 640, 645 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993). Furthermore, "the proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not ... for the first time on appeal." *State v. Bobo,* 803 P.2d 1268, 1273 (Utah App.1990). Spurgeon and McFarland did not raise any protec-

tions afforded by the Utah Constitution at the trial court. Consequently, "[b]ecause appellants failed to develop any meaningful state constitutional argument below, our analysis must proceed solely under federal constitutional law." *State v. Dudley,* 847 P.2d 424, 426 (Utah App. 1993).

**3.** Defendants, the State, and the trial court all speak of Mangelson's stop in terms of reasonable suspicion. We note the present case does not require a reasonable suspicion analysis. When a traffic violation occurs in an officer's presence, the officer is always justified in stopping that vehicle. Reasonable suspicion becomes part of a court's inquiry only when the officer does not observe a specific traffic violation. *See State v. Lopez,* 873 P.2d 1127, 1132 (Utah 1994).

"To determine whether a search or seizure is constitutionally reasonable, we make a dual inquiry: (1) Was the police officer's action 'justified at its inception'? and (2) Was the resulting detention 'reasonably related in scope to the circumstances that justified the interference in the first place'?." *Id.* at 1131–32 (quoting *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889). Defendants and the State both have failed to distinguish the two prongs of the first half of that dual Fourth Amendment inquiry. To analyze whether a stop is justified at its inception, we first ask whether a traffic violation occurred in the officer's presence and only then, if the answer is no, do we move on to ask whether the officer had reasonable articulable suspicion. *Id.* at 1132. Thus, reasonable suspicion is not part of our constitutional inquiry in the present case because the traffic violations occurred in Mangelson's presence.

officer's presence unless those findings are against the clear weight of evidence. *See Delaney,* 869 P.2d at 6–7.

"[A] police officer is constitutionally justified in stopping a vehicle if the stop is 'incident to a traffic violation committed in the officer['s] presence.'" *State v. Lopez,* 873 P.2d 1127, 1132 (Utah 1994) (quoting *State v. Talbot,* 792 P.2d 489, 491 (Utah App.1990)). We consistently have held that speeding justifies a traffic stop. *See, e.g., State v. Castner,* 825 P.2d 699, 702 (Utah App.1992). Spurgeon and McFarland admit that McFarland was driving at least seventy-two miles per hour in a sixty-five mile per hour speed zone and that one of the vehicle's taillights was broken.[4]

■ Mangelson's testimony that he stopped Spurgeon and McFarland because of the broken taillight does not negate the fact that McFarland was also speeding. "[A] reasonable officer would have stopped [McFarland] for travelling six [or seven] miles over the speed limit on an interstate highway." *Delaney,* 869 P.2d at 7. Moreover, even without the speeding violation, an equipment violation also justifies an investigative stop by law enforcement officers.[5]

Utah courts uniformly have held that observed traffic violations give "the officer 'at the least, probable cause to believe the citizen ha[s] committed a traffic offense.'" *Lopez,* 873 P.2d at 1132 (quoting *State v. Smith,* 781 P.2d 879, 882 n. 2 (Utah App.1989)). In other words, Mangelson's stop of Spurgeon and McFarland was based on probable cause of two traffic violations. Mangelson was justified in stopping the vehicle either because of the speeding violation or because of the broken taillight. Any inconsistency in the record between Mangelson's testimony and the trial court's conclusion simply reflects that the stop was constitutionally justified because of more than one traffic violation.

In sum, we find no clear error in the trial court's findings. The trial court's determination that Mangelson's stop of Spurgeon and

McFarland's vehicle was incident to a traffic violation committed in Mangelson's presence is not against the clear weight of evidence. Accordingly, we affirm the trial court's conclusion that the stop of the defendants' vehicle was constitutionally justified.

## II. The Search

Spurgeon and McFarland also contend that Mangelson's search of the vehicle and of McFarland's person exceeded the bounds of the Fourth Amendment. The defendants suggest that the trial court incorrectly concluded that Mangelson's pat down and seizure of cocaine from McFarland's person was lawful. The State responds that the trial court correctly concluded that Mangelson had probable cause not only to search the vehicle but also to arrest Spurgeon and McFarland. The State argues that Mangelson's search of the vehicle and of McFarland's person was lawful under the incident to arrest exception to the Fourth Amendment's warrant requirement.

■ We review a trial court's determination of whether a particular set of facts constitutes probable cause nondeferentially for correctness, affording a measure of discretion to the trial court. *State v. Poole,* 871 P.2d 531, 533 (Utah 1994) (citing *State v. Pena,* 869 P.2d 932, 935 (Utah 1994)). "Although the legal standards and consequences of probable cause and reasonable suspicion are distinct, we believe that the standards for reviewing them should be the same." *Id.* Thus, following *Pena*'s central metaphor, we do not conduct a close, de novo review of the trial court's probable cause determination; rather, we review "the placement of the legal fences which delimit the pasture of trial court discretion to determine what constitutes [probable cause]." *Pena,* 869 P.2d at 939 n. 5.

■ The facts presented to the trial court in the instant case meet the legal standard of probable cause to arrest articulated by Utah appellate courts. Probable cause is

---

4. On cross examination at the suppression hearing, Mangelson acknowledged that upon close inspection red-transparent tape covered the broken portion of the taillight.

5. Broken taillights violate Utah Code Ann. § 41–6–120 (1993) and Utah Admin.R. 714–200–3(4) (1995).

central to the protection of Fourth Amendment rights. Law enforcement officers may never arrest citizens in the absence of probable cause. *Dunaway v. New York*, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824 (1979). Additionally, law enforcement officers may neither search nor seize unless and until they have a warrant supported by probable cause. Searches and seizures conducted without a warrant are "unreasonable per se unless [they] fall[ ] within a recognized exception to the warrant requirement of the fourth amendment." *State v. Bartley*, 784 P.2d 1231, 1235 (Utah App.1989).

■ Departures from the warrant requirement must be limited to "a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). For example, specific exceptions to the warrant requirement include searches incident to arrest, searches of movable vehicles, and seizure of clearly incriminating evidence or contraband in plain view. *State v. Hygh*, 711 P.2d 264, 267 (Utah 1985). The Fourth Amendment, however, does not permit such warrantless activities unless the police have probable cause for the arrest or search.

Probable cause thus becomes the key to our analysis in the present case. The Utah Supreme Court has defined probable cause as follows: "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that' an offense has been or is being committed." *State v. Dorsey*, 731 P.2d 1085, 1088 (Utah 1986) (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)).

■ As a legal standard, probable cause strikes a balance between the rights of individual citizens and the interests of the people as a whole in law enforcement:

Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable [persons], acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

*Brinegar*, 338 U.S. at 176, 69 S.Ct. at 1311. The probable cause requirement thus guides the police and protects the people.

■ Probable cause is an objective standard. Officers' subjective beliefs, no matter how sincere, about whether they have probable cause, standing alone, neither constitute probable cause nor foreclose a finding of probable cause. *See id.* Nevertheless, courts may recognize officers' specific experience and training in probable cause determinations. *Id.* For example, an officer's specialized knowledge of the appearance or odor of controlled substances is relevant in determining whether the officer had probable cause to arrest. *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

■ Determinations of whether probable cause exists require a common sense assessment of the totality of the circumstances confronting the arresting or searching officer. *Dorsey*, 731 P.2d at 1088. Probable cause is more than suspicion but less than certainty.

"In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of every day life on which reasonable and prudent [persons], not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

*Id.* (quoting *Brinegar*, 338 U.S. at 175, 69 S.Ct. at 1310). "The quantum of evidence needed for probable cause is significantly less than that needed to prove guilt." *Bartley*, 784 P.2d at 1235. Utah appellate courts have observed that "probable cause does not require more than a rationally based conclu-

sion of probability," *Dorsey,* 731 P.2d at 1088, and that probable cause is " 'only the probability, and not a prima facie showing, of criminal activity.' " *State v. Brown,* 798 P.2d 284, 285 (Utah App.1990) (citations omitted).

Probable cause to arrest and probable cause to search are distinct legal concepts. "It is generally assumed by the Supreme Court and the lower courts that the same quantum of evidence is required whether one is concerned with probable cause to arrest or probable cause to search." 1 Wayne R. La-Fave, *Search and Seizure* § 3.1(b), at 544 (2d ed. 1987). However, probable cause to arrest and probable cause to search should always be distinguished because "[e]ach requires a showing of probabilities as to somewhat different facts and circumstances." 1 *id.*

■ The instant case presents facts and circumstances that give rise to both probable cause to arrest and probable cause to search. Mangelson, a twenty-seven-year veteran of the Utah Highway Patrol with considerable training and experience in drug interdiction, lawfully stopped Spurgeon and McFarland on Interstate 15—a "known drug trafficking route." *See Poole,* 871 P.2d at 534. While making the stop, Mangelson noticed that Spurgeon and McFarland looked like they were trying to hide something. Spurgeon and McFarland did not pull over immediately but traveled farther than necessary to bring their vehicle to a stop.

■ Upon approaching the passenger-side window, Mangelson detected the distinct odor of burnt marijuana emanating from the vehicle. It is well settled that the odor of marijuana emanating from a vehicle establishes probable cause for the warrantless search of that vehicle. *State v. Dudley,* 847 P.2d 424, 426–27 (Utah App.1993); *State v. Naisbitt,* 827 P.2d 969, 972–73 (Utah App. 1992). Moreover, we previously have observed "that probable cause *for arrest* may arise from an officer's sense of smell." *Bartley,* 784 P.2d at 1236 (emphasis added).

■ Spurgeon and McFarland also initially denied that they had been smoking marijuana. False denials often are significant in probable cause determinations.

"Courts and commentators generally agree that a defendant's false or evasive responses [to police questions] in conjunction with highly suspicious behavior may be used to determine the existence of probable cause." *State v. Menke,* 787 P.2d 537, 542 (Utah App.1990). Thus, viewed in their totality and as Mangelson encountered them, these facts and circumstances gave rise to probable cause to arrest Spurgeon and McFarland.

■ Mangelson initially had probable cause to arrest Spurgeon and McFarland for possession or use of a controlled substance in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1995). The fact that the pat down and seizure of the cocaine from McFarland's person occurred moments before the formal arrest is insignificant. Probable cause to arrest existed prior to the pat down; therefore, the search of McFarland's person was incident to arrest because the arrest "followed quickly on the heels of the challenged search." *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). The baggy of cocaine recovered from McFarland was evidence of a separate and additional crime; moreover, it gave Mangelson additional probable cause to continue his search of the vehicle.

Spurgeon and McFarland's case closely resembles *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In *Belton,* a speeding vehicle passed a New York State patrolman who was riding in an unmarked car. The officer gave chase and stopped the speeding vehicle. Upon approaching the vehicle, the officer smelled burnt marijuana, and he noticed an envelope on the floor of the car marked "Supergold" which he associated with marijuana. Based on these two observations, the officer directed the four occupants out of the car, placed them under arrest, and patted them down. Following the arrest, the officer also searched the passenger compartment of the car and found a black leather jacket belonging to Belton. The officer unzipped one of the jacket pockets and found cocaine. *Id.* at 455–56, 101 S.Ct. at 2861–62.

The United States Supreme Court found the search lawful under the incident to arrest

exception to the warrant requirement. Once an officer has made "a lawful custodial arrest of the occupant of an automobile," the officer "may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. at 2864. Automobile searches incident to arrest may include "the contents of any containers found within the passenger compartment." *Id.* The *Belton* Court also observed that the "justification for the search is not that the arrestee has no privacy interest in the [jacket], but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." *Id.* at 461, 101 S.Ct. at 2864.

■ Having concluded that Mangelson had probable cause to arrest Spurgeon and McFarland, we follow the *Belton* Court's lead and find that the search of McFarland's person, the seizure of cocaine from his sweat pants, and the search of the passenger compartment of the vehicle were lawful under the incident to arrest exception to the Fourth Amendment's warrant requirement.[6] Even though Mangelson considered the pat down of McFarland as a frisk for weapons, his conduct nonetheless was justified as part of a search incident to arrest. *See Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978) (holding "fact that officer does not have the state of mind which is hypothecated by the reasons which provided the legal justification for the officer's action does not invalidate the action taken, so long as the circumstances, viewed objectively, justify that action"); *accord State v. Lopez,* 873 P.2d 1127, 1137 (Utah 1994) ("[T]he Fourth Amendment simply does not require an officer's state of mind to perfectly correspond to his or her legally justified actions.").

■ The Supreme Court's holding in *Belton* limits searches incident to arrest to the vehicle's passenger compartment. *See* 453 U.S. at 460 n. 4, 101 S.Ct. at 2864 n. 4

(excluding trunk from scope of permissible searches incident to arrest). Federal courts consistently have held that the trunk of a vehicle is not within the scope of a search incident to arrest. *See, e.g., United States v. Wright,* 932 F.2d 868, 878 (10th Cir.) (collecting cases holding trunk lies outside permissible *Belton* search), *cert. denied,* 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). Therefore, Mangelson's search of McFarland's trunk does not fall easily within the Fourth Amendment's exception for searches incident to arrest.

■ Nevertheless, the search of the trunk was supported by probable cause. Subsequent to *Belton,* the Supreme Court has held that "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991). Because Mangelson acquired additional probable cause to search the trunk for contraband from his lawful searches of the vehicle's interior and of McFarland's person, his search of the trunk did not exceed constitutional bounds.

Spurgeon and McFarland mistakenly rely on *United States v. Nielsen,* 9 F.3d 1487 (10th Cir.1993) for their contention that the trial court should have suppressed evidence discovered in the trunk. In *Nielsen,* the arresting officer smelled burnt marijuana emanating from the defendant's car. During a consensual search of the passenger compartment, however, the officer could not find any evidence to corroborate his suspicion of drug use. When the officer indicated he wanted to look in the trunk, the defendant twice declined to consent. *Id.* at 1489 n. 1. The officer removed the keys from the ignition, opened the trunk, and discovered scales and two kilograms of cocaine. *Id.* at 1488.

The Tenth Circuit Court of Appeals held that the arresting officer lacked probable

---

6. Spurgeon and McFarland urge us to analyze the stop and subsequent pat down search under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). They argue that under *Terry,* Mangelson's pat down was unlawful because he had no reasonable and articulable suspicion

that they might be armed and dangerous. Because we conclude that Mangelson had probable cause to arrest Spurgeon and McFarland prior to the pat down, we need not engage in a full analysis under *Terry.*

cause to search the trunk because he did not find any evidence of drug use in the passenger compartment. *Id.* at 1491. The *Nielsen* court, however, observed that evidence corroborating the officer's suspicion of drug use discovered in the passenger compartment would have established probable cause to search the trunk. *Id.* at 1490–91. Thus, *Nielsen* narrowly addresses those circumstances where the odor of burnt marijuana is unsupported by additional evidence of drug use or trafficking. *Id.* at 1491. Hence, Spurgeon's and McFarland's reliance on *Nielsen* is misplaced.

In the present case, Mangelson found marijuana fragments, rolling papers, and Visine in the passenger compartment. Taken together, these items all suggested marijuana use. Furthermore, Spurgeon and McFarland admitted they had just smoked a joint. Mangelson also had recovered cocaine from McFarland's sweat pants and had placed Spurgeon and McFarland under arrest. All these circumstances gave Mangelson independent probable cause to search the trunk of the vehicle. Therefore, Mangelson's search of the trunk was reasonable under the circumstances.

In sum, Mangelson had probable cause to arrest Spurgeon and McFarland for possession or use of a controlled substance. Probable cause arose from the odor of burnt marijuana together with the defendants' false denials, furtive movements, and failure to stop immediately. Thus, Mangelson's search of defendants and the passenger compartment of their vehicle was a lawful search incident to arrest. Additionally, independent probable cause supported Mangelson's search of the trunk. Mangelson did not infringe Spurgeon's or McFarland's Fourth Amendment rights, and the trial court correctly denied defendants' motions to suppress evidence.

## CONCLUSION

We hold that Mangelson had probable cause to stop Spurgeon and McFarland's vehicle based on their violation of the speed limit as well as on a potential equipment violation. We also hold that Mangelson's search was not unreasonable and thus did not exceed the bounds of the Fourth Amend-

ment. The trial court correctly denied Spurgeon's and McFarland's motions to suppress evidence. Accordingly, we affirm Spurgeon's and McFarland's convictions.

BENCH and WILKINS, JJ., concur.