[701 NYS2d 395]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TERRENCE DARBY, Respondent.

First Department, January 18, 2000

APPEARANCES OF COUNSEL

*James D. Gibbons* of counsel (*Robert M. Morgenthau, District Attorney* of New York County, attorney), for appellant.

*Richard M. Weinstein* for respondent.

## OPINION OF THE COURT

SAXE, J.

The suppression of the controlled substances seized from defendant was based upon the hearing court's conclusion that a portion of the police officers' testimony was contradicted by expert testimony, and its consequent rejection of that aspect of the officers' testimony. We conclude that the expert's testimony did not contradict the officers' observations, and that therefore rejection of their testimony was unnecessary and unwarranted.

The arresting officers testified at the suppression hearing that when they were several feet from defendant, they detected the very strong smell invariably associated with street-level phencyclidine (PCP) wafting from him. They explained that in their training at the Police Academy, and in the course of approximately 50 prior arrests for PCP possession or sale, they have learned to recognize the distinctive odor. Indeed, they indicated that the Police Department uses special plastic bags for storing vouchered PCP to contain the smell.

In granting defendant's suppression motion, the hearing court credited the testimony of defendant's expert to the effect that pure, unadulterated PCP does not give off an odor at room temperature, and would not alter the odor of a substance such as marihuana that was mixed with it. In view of this testimony, the court rejected that portion of the officers' testimony in which they said they smelled PCP on defendant prior to conducting their search of his pocket.

We generally do not disturb determinations concerning credibility and the evaluation of expert testimony which are supported by the record (*see, People v Prochilo*, 41 NY2d 759, 761). Here, however, acceptance of the expert's testimony did not require the rejection of the officers' testimony. The expert merely stated that pure, unadulterated PCP has no smell. He conceded that he had no familiarity with the chemical make-up of current "street-level" PCP. On the other hand, the officers stated that the "street-level" PCP that they are familiar with, from training and from numerous prior arrests, possesses a distinctive, pungent odor. Therefore, the two sets of testimony do not contradict one another. Accepting as true the expert's

assertion, his testimony afforded no logical basis for discounting the officers' assertions that they had detected the odor associated with PCP. The officers did not challenge the odorless nature of PCP; they merely asserted that the street-level (i.e., adulterated) PCP they encountered on the job had a distinctive odor.

The hearing court believed that in view of the expert's testimony, it was incumbent upon the People to offer evidence identifying and explaining the nature of the adulterant mixed with the street-level PCP found in defendant's possession that caused the asserted distinctive odor. We disagree.

It is fair to say that virtually every adult member of our society knows full well that illegal drug sales transacted on street corners do not involve pure, unadulterated substances. Sadly, this is such common knowledge as to fall within the category of "notorious facts" of which judicial notice may be taken (see, Prince, Richardson on Evidence § 2-203 [Farrell 11th ed]). It having been established that the street-level PCP regularly encountered by the police could be identified by its distinctive odor, the issue of exactly which adulterant created the odor is irrelevant. To require expert testimony in order to establish the identity of the particular adulterant in the PCP in defendant's possession, and in the PCP the officers had previously encountered, would constitute an unnecessary waste of time. The distinctiveness of the odor was enough, when combined with the officers' other observations and knowledge, to give the officers probable cause for stopping and searching defendant.

Therefore, the hearing court lacked a valid basis for its rejection of the officers' testimony that they smelled the distinctive odor of PCP. Once the officers' testimony is accepted in this respect, probable cause for the challenged search has been successfully established, and suppression must be denied.

Accordingly, the order of the Supreme Court, New York County (James Yates, J.), entered on or about April 24, 1998, which granted defendant's suppression motion, should be reversed, on the law, the motion denied, and the matter remanded for further proceedings.

ROSENBERGER, J. P. (dissenting). The People appeal from an order granting defendant's motion to suppress crack cocaine and phencyclidine (PCP) seized from his person. At the suppression hearing, Sergeant Timothy Breen testified that on the evening of October 23, 1997, he responded to anonymous

complaints of drug dealing from an apartment building. He and his partner observed three people, at different times, stop in front of the building, speak to defendant, enter the building with him and exit a minute later. The officers entered the building and encountered defendant counting money on the stairs. For safety reasons, Breen placed his hands on defendant's waistband and right jacket pocket.

At this point, Breen alleged, he detected an odor that he claimed he recognized from other drug arrests as PCP. This prompted him to reach into the pocket and remove a plastic bag containing 19 bags of PCP and 20 bags of crack cocaine.

Breen's partner, Officer Paul Nyland, also testified that he was familiar with the odor of PCP from other drug arrests, and that he smelled it coming from defendant's pocket. The People did not present any expert testimony concerning the physical properties of PCP generally or the chemical composition of the PCP found on defendant. Moreover, the police laboratory report in the record contains a separate page showing that a test was performed on the crack cocaine to determine its composition and purity (88.1%), but simply lists the contents of the other bags as 32.1 grains of phencyclidine without specifying its purity or what additives, if any, were included. The PCP emitted no odor when displayed in the courtroom at the suppression hearing in a sealed plastic bag from the police laboratory.

Defendant's expert, Dr. Max Solomon, was qualified as an expert in chemical analysis who had analyzed PCP more than 100 times, mainly in connection with criminal cases, although he had not done so within the past 12 years. Under thorough questioning by both counsel and the Judge, Dr. Solomon testified unequivocally that PCP does not give off any odor at room temperature, whether in its pure crystalline form or in the diluted form in which it is typically sold on the street. When burned, as in a cigarette, PCP does have an odor.

The majority conveys the mistaken impression that Dr. Solomon restricted his testimony to the properties of pure PCP and was ignorant of the form in which it was sold by dealers. To the contrary, the witness testified that drug dealers typically dilute the pure product with vegetable matter such as marihuana, paper or leaves, but that even adulterated PCP did not have a PCP-specific odor. For instance, if the added substance was marihuana, the mixture would smell like ordinary marihuana.

The only time PCP would have an odor of its own, Dr. Solomon stated, would be if the compound were improperly pre-

pared with an excess of piperidine, a liquid which is one of the three chemical components of PCP. However, he believed it would be uncommon to find PCP with excess piperidine on the street.

The court stated, prior to ruling on the motion, that in light of Dr. Solomon's testimony, it was incumbent upon the People to present evidence either contradicting the defense expert's assertion that PCP has no odor, or showing that the PCP recovered from defendant had an odoriferous additive or component such as piperidine. As the prosecution did not do so, the court found a lack of probable cause and granted defendant's motion.

Contrary to the majority's characterization, the court did not suppress the contraband because of the absence of proof that it was less than 100% pure. As even defendant's expert noted, street-level drugs are typically impure. However, the issue is not whether any impurities were present, but what they might have been.

The hearing court did not err. "Questions of credibility are primarily to be resolved by the trier of fact who actually sees and hears the witnesses, and whose determination is to be accorded great weight and not disturbed on appeal unless clearly unsupported by the record" (*Matter of Noe H.*, 210 AD2d 43; *see also, People v Harper*, 156 AD2d 380, 381, *lv denied* 76 NY2d 736). The record supports the court's rejection of the officers' allegations that they were able to smell room-temperature PCP through two layers of plastic bags, inside defendant's coat pocket. Defendant's expert presented uncontroverted scientific testimony that this would not be possible. If the People disagreed with Dr. Solomon's conclusions as to the drug's observable characteristics, they could have presented their own expert; for example, a chemist who could testify that the PCP recovered from defendant had an excess of piperidine.

The majority treats several matters as established fact, disregarding the credibility findings of the Supreme Court. Yet, the hearing court not only saw and heard the witnesses, but also saw the subject packet of PCP and had the opportunity to assess its smell or lack thereof.

If the officers' testimony about the odor is not considered, the remaining facts do not amount to probable cause. Defendant was not seen exchanging any objects with the persons who entered the building or receiving any currency from them, nor did the officers overhear any of the conversations between these individuals (*People v Wilson*, 175 AD2d 15, 17, *lv denied* 78

NY2d 1015). While the officers' observations may have provided a basis for requesting information, they did not justify a search of his pockets (*supra*, at 17). Accordingly, I would affirm the motion court's order.

WILLIAMS and MAZZARELLI, JJ., concur with SAXE, J.; ROSENBERGER, J. P., and TOM, J., dissent in a separate opinion by ROSENBERGER, J. P.

Order, Supreme Court, New York County, entered on or about April 24, 1998, reversed, on the law, defendant's motion to suppress denied, and the matter remanded for further proceedings.