2007 UT App 170

**STATE of Utah, Plaintiff and Appellee,**

v.

**Raymond Charles MARQUEZ, Defendant and Appellant.**

**No. 20060710–CA.**

Court of Appeals of Utah.

May 17, 2007.

Samuel S. Bailey, Price, for Appellant.

Mark L. Shurtleff, atty. gen., and Christine Soltis, asst. atty. gen., Salt Lake City, for Appellee.

Before BENCH, P.J., BILLINGS and McHUGH, JJ.

## OPINION

McHUGH, Judge:

¶ 1 Defendant Raymond Charles Marquez appeals the district court's denial of his motion to suppress evidence of drugs and drug paraphernalia found on his person during a search. Marquez argues that he was unlawfully searched in violation of his Fourth Amendment rights and that therefore all evidence obtained as a result of the search should be excluded. We disagree and affirm.

## BACKGROUND

¶ 2 "We state the facts in a light most favorable to the trial court's ruling denying [a] motion to suppress." *State v. Chansamone*, 2003 UT App 107, ¶ 1 n. 1, 69 P.3d 293. On the evening of January 29, 2005, at about 9:30 p.m., law enforcement officers executed a search warrant to locate and arrest Raymon Gerrish at a residence in Helper City, Utah. Gerrish was a fugitive from Utah's Department of Corrections, wanted for possession of illegal substances and for "absconding" from Adult Probation and Parole. The search warrant was supported by affidavit testimony indicating that Gerrish was "hiding out" at the residence, that other occupants of the residence might be acting as his "lookouts," and that entry at night was necessary for officer safety purposes.

¶ 3 Approximately five officers, including Officers Anderson and Wood, approached the residence, knocked and announced their presence, and demanded entry. When the officers received no response, they entered the house with their guns drawn. Upon entering, officers immediately encountered a male and a female "backpedaling" toward the rear end of the house and saw another male, later identified as Defendant Raymond Marquez, in the kitchen. While Officer Anderson secured the male and female suspects in the rear of the house and then identified the

male suspect as Gerrish, Officer Wood simultaneously made contact with Marquez in the kitchen, ordered him to the floor, handcuffed him, and frisked him for weapons. At this point in his encounter with Marquez, Officer Wood did not know whether Marquez was Gerrish or simply an occupant of the house.

¶ 4 When Officer Wood frisked Marquez, he felt a hard bulge in Marquez's front pocket and asked Marquez what it was. Marquez answered "paraphernalia." Officer Wood then removed a hypodermic needle and a spoon from Marquez's pocket and placed Marquez under arrest for possession and use of a controlled substance and possession of paraphernalia.

¶ 5 Marquez sought to suppress evidence of the contraband found on his person during the pat-down. His motion was denied and he was convicted of unlawful possession of a controlled substance, *see* Utah Code Ann. § 58–37–8(2)(a) (2004), and possession of paraphernalia in a drug-free zone, *see id.* §§ 58–37a–5, –8(4) (2004). He now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Marquez argues that the trial court erred when it denied his motion to suppress evidence of drugs and drug paraphernalia found in his pocket during an illegal search. We review the factual findings underlying a trial court's decision to grant or deny a motion to suppress evidence under the clearly erroneous standard and review the legal conclusions for correctness. *See State v. Parra,* 972 P.2d 924, 926 (Utah Ct. App.1998).

## ANALYSIS

¶ 7 The trial court denied Marquez's motion to suppress because it found that at the time Marquez was frisked and then questioned, Officer Wood did not know if Marquez was the subject of the search warrant and that therefore Officer Wood was justified in frisking Marquez and asking him about the contents of his pocket for purposes of officer safety. Marquez argues that the circumstances of the encounter did not justify the frisk and that once handcuffed, he was sufficiently subdued so that frisking him and then asking him about the bulge in his pocket did not advance any officer safety objectives. Accordingly, Marquez argues the search was outside the scope of his lawful detainment.

¶ 8 The Fourth Amendment establishes a right "against unreasonable searches and seizures." U.S. Const. amend. IV. When determining whether a warrantless search [1] or seizure is reasonable, " 'we must first determine whether the officer's action was justified at its inception. If so, we must then consider whether the resulting detention was reasonably related in scope to the circumstances that justified the interference in the first place.' " *State v. Valdez,* 2003 UT App 100, ¶ 10, 68 P.3d 1052 (quoting *State v. Chapman,* 921 P.2d 446, 450 (Utah 1996)).

¶ 9 Here, Marquez concedes that his initial detention was justified at its inception.[2] His argument on appeal concerns only the second prong of the analysis: whether the subsequent frisk of his person and the officer's question regarding the contents of his pocket exceeded the scope of his initial lawful detention.

## I. Legality of Frisk

¶ 10 In executing a valid search warrant, handcuffing occupants on the premises does not necessarily exceed the scope of a reasonable detention because of the need for officers to "exercise unquestioned command of the situation" for safety purposes. *Michigan v. Summers,* 452 U.S. 692, 702–03, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (upholding the detention and handcuffing of occupants while police were executing a search warrant for narcotics because "[t]he risk of

---

1. The officers had a warrant to search the premises, but not to search the occupants of the home. Therefore, the search of Marquez was a warrantless search under the Fourth Amendment.

2. Marquez does not contest the validity of the search warrant authorizing the officers to enter the house. Therefore, we need not address the

first prong under *Terry v. Ohio. See* 392 U.S. 1, 32, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1998) (Harlan, J, concurring) ("[I]f the frisk is justified in order to protect the officer during an encounter ..., he must first have a right[,] ... to be in [defendant's] presence.")

harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation"); *see also Muehler v. Mena*, 544 U.S. 93, 98–99, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (recognizing that "[i]nherent in [the] authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention"). Further, the Utah Supreme Court has recognized that, in certain circumstances, for purposes of officer safety, it is reasonable for officers to frisk handcuffed occupants of a private residence during the execution of a search warrant.[3] *See State v. Banks*, 720 P.2d 1380, 1383 (Utah 1986) (holding that the initial restraint with handcuffs and pat-down search of an occupant of a home subject to a search warrant was permissible because "officers were entitled to restrain [the occupant] to the extent they believed necessary to ensure their safety" (citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968))); *State v. Valdez*, 2003 UT App 100 at ¶ 22, 68 P.3d 1052 (finding it reasonable for officers executing an arrest warrant inside a home to ensure that individuals present "ha[ve] no weapons in [their] hands and [are] in no position to violently interfere with the arrest"); *cf. State v. Peterson*, 2005 UT 17, ¶ 13, 110 P.3d 699 (holding unreasonable a search of clothing not within reach of occupant of home but offered by police while occupant was detained outside in cold weather, despite occupant's concession that the

original detainment, handcuffing, and Terry frisk were proper).

¶ 11 Whether, in this particular case, Officer Wood was justified in frisking Marquez must be determined under the *Terry* analysis of reasonable warrantless searches or seizures. *See Valdez*, 2003 UT App 100 at ¶ 18, 68 P.3d 1052 (relying on the *Terry* analysis to determine the reasonableness of the detention and questioning of an occupant in a home where officers were executing an arrest warrant); *Banks*, 720 P.2d at 1383 (determining that, under *Terry*, it was reasonable to restrain with handcuffs and then frisk an occupant of a home subject to a search warrant). Under *Terry*, the reasonableness of any warrantless search must be determined on a case-by-case basis with the focus on the totality of the circumstances. *See Terry*, 392 U.S. at 29, 88 S.Ct. 1868 (holding that the limitations of the Fourth Amendment "will have to be developed in the concrete factual circumstances of individual cases"). Accordingly, we turn to the specific facts surrounding the search of Marquez to determine whether Officer Wood's frisk of Marquez was reasonable.[4]

¶ 12 The record reflects that the officers received information that Gerrish was a fugitive, wanted for possession of controlled substances, that he was "hiding out" in the residence, and that other persons present at the home were acting as "lookouts" for him. Upon entering the house, Officer Wood testified that he did not know whether Marquez

---

**3.** Other jurisdictions have also acknowledged that "[c]ircumstances giving rise to sufficiently specific and articulable facts to warrant the stop and pat[-]down of an individual include .... an individual's ownership or occupancy of private premises for which a search warrant has been obtained." *United States v. Jaramillo*, 25 F.3d 1146, 1151 (2d Cir.1994) (citations and quotations omitted).

**4.** In arguing that the frisk was unreasonable, Marquez relies on *State v. Warren*, 2001 UT App 346, 37 P.3d 270, *aff'd*, 2003 UT 36, 78 P.3d 590, in which this court articulated two general scenarios that warrant a Terry frisk: those where (1) "facts and circumstances unique to the particular suspect and/or factual context may give rise to a reasonable suspicion the suspect may be armed" and (2) "the inherent nature of the crime being investigated ... leads to the reasonable

suspicion that the suspect may be armed." *Id.* at ¶ 15; *see also id.* (noting further that "[c]rimes that, by their nature, suggest the presence of weapons include: robbery, burglary, rape, ... and dealing in large quantities of narcotics," while "trafficking in small quantities of narcotics" and "possession of marijuana" cannot reasonably lead an officer to believe that a suspect is armed (quotations omitted)). Marquez addresses only the second scenario under *Warren* and argues that because Gerrish's underlying crime of possession did not necessarily indicate that he might be armed or violent, it was unreasonable to search Marquez in the event that he might be Gerrish because officer safety was not at issue. Because we conclude that there are unique facts and circumstances in the instant case that reasonably led the officers here to take precautions for safety purposes, we disagree.

was Gerrish,[5] and that he did not know what "the situation was inside the house." These facts, coupled with the inherent danger associated with entering a residence at night, sufficiently establish that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. 1 at 23, 88 S.Ct. 1868; *cf. Summers*, 452 U.S. at 702–03, 101 S.Ct. 2587 (noting that execution of warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence"). Further, information that occupants may be acting as "lookouts" for Gerrish reasonably suggests that any person on the premises during the search might violently interfere with the search or the arrest of Gerrish. Accordingly, we agree with the trial court that the frisk was reasonable for purposes of officer safety and therefore did not violate Marquez's Fourth Amendment rights.

¶ 13 Marquez further argues that once he was handcuffed, any risk he may have posed to the officers was eliminated and therefore the frisk was unreasonable. Although we concede that handcuffing Marquez at the inception of the encounter likely mitigated some risks to officer safety, we disagree that handcuffing a suspect eliminates all such risks. We find the Fifth Circuit's analysis with respect to the risks associated with relying entirely on handcuffs particularly helpful.

[Defendant's] argument [that a frisk after he was handcuffed was unreasonable] is entirely dependent on the assumption that, by handcuffing a suspect, the police instantly and completely eliminate all risks that the suspect will flee or do them harm. As is sadly borne out in the statistics for police officers killed and assaulted in the line of duty each year, however, this assumption has no basis in fact.

Handcuffs are a temporary restraining device; they limit but do not eliminate a person's ability to perform various acts. They obviously do not impair a person's ability to use his legs and feet, whether to walk, run, or kick.... Albeit difficult, it is by no means impossible for a handcuffed

person to obtain and use a weapon concealed on his person....

*United States v. Sanders*, 994 F.2d 200, 209–10 (5th Cir.1993) (footnote omitted); *cf. State v. Austin*, 584 P.2d 853, 856 (Utah 1978) (holding that the search of "the immediate area" surrounding a defendant who was handcuffed and already in custody was proper for purposes of officer safety). Because we agree that handcuffing Marquez did not entirely eliminate the risk of harm to the officers, we hold it was reasonable under the Fourth Amendment for Officer Wood to frisk Marquez after placing him in handcuffs. *See Peterson*, 2005 UT 17 at ¶ 9, 110 P.3d 699 (recognizing that "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties" (quotations omitted)).

## II. Probable Cause to Arrest

¶ 14 Marquez's final argument on appeal is that Officer Wood improperly questioned him about the hard object he felt during the frisk. We disagree. We first note that the trial court, having determined that Officer Wood was authorized to detain, handcuff, and frisk Marquez for purposes of officer safety, concluded that the officer was then also justified in taking steps to determine whether the hard object in Marquez's pocket was a weapon. Marquez does not challenge this finding on appeal. And, we agree that it is axiomatic that when a lawful frisk indicates a suspicious object, the officer at risk is justified in making further inquiries to ascertain whether the subject of the frisk is armed. Accordingly, Officer Wood's question did not violate Marquez's Fourth Amendment rights and Marquez's response was voluntary. Once he told Officer Wood that his pocket contained "paraphernalia," there was sufficient probable cause to arrest Marquez and conduct a search incident to arrest.

## CONCLUSION

¶ 15 We conclude, based on the totality of the circumstances in this case, that it was reasonable for officers to handcuff and then

---

5. The record shows that Gerrish is 5'9" and weighs 151 pounds, has hazel eyes, and has brown hair; Marquez is 5'8", weighs 160 pounds, and has brown eyes and brown hair.

frisk Marquez upon encountering him on premises subject to a valid search warrant. We also conclude that it was reasonable for Officer Wood to question Marquez about the contents of his pocket after having felt a hard object during a lawful frisk. Further, because Officer Wood's questioning did not violate Marquez's Fourth Amendment rights, we agree with the trial court that Marquez voluntarily told Officer Wood that his pocket contained drug paraphernalia. This information gave Officer Wood probable cause to arrest Marquez and then conduct a valid search incident to arrest. Accordingly, the trial court correctly denied Marquez's motion to suppress.

¶ 16 Affirmed.

¶ 17 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and JUDITH M. BILLINGS, Judge.