2011 UT App 323

STATE of Utah, Plaintiff and Appellee,

v.

Allen Smith LLOYD, Defendant and Appellant.

No. 20090920–CA.

Court of Appeals of Utah.

Sept. 22, 2011.

provides that "[s]entence may not be announced unless the motion [to withdraw plea] is denied." Utah Code Ann. § 77–13–6(2)(b).

Brittany R. Brown and Randall W. Richards, Ogden, for Appellant.

Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee.

Before Judges ORME, ROTH, and CHRISTIANSEN.

## OPINION

ORME, Judge:

¶ 1 Defendant Allen Smith Lloyd appeals his conviction for possession of a controlled substance, a third-degree felony, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2011), claiming that the district court erred in denying his motion to suppress. The suppression motion challenged the reliability of a citizen informant's report and the viability of odor evidence in the context of evaluating reasonable suspicion and probable cause. We affirm.

## BACKGROUND

¶ 2 At 9:19 p.m. on March 8, 2008, the Ogden City Police Department received a report from a woman that there were three people in a small, green car parked behind the building in which she resided. She indicated that she could see and smell the individuals inside the vehicle "smoking drugs." The informant identified herself as Stacy. It is unclear whether officers knew her last name or exact address. Nevertheless, Stacy was possibly familiar to the police because she had previously been in contact with the Weber–Morgan Narcotics Strike Force.

¶ 3 Two police officers, Officers Powers and Harris, arrived on the scene. Just as Stacy described, the officers saw a small, green car parked behind Stacy's building. As the officers approached the car, they confirmed that there were three individuals in the vehicle. Approximately ten feet from the vehicle, the officers detected a "cat urine" odor emanating from the vehicle that they both associated with a burning narcotic. Officer Powers testified that he specifically distinguished the odor to be "crack cocaine." The officers did not see any illegal items or activity as they neared the vehicle.

¶ 4 Once at the car, Officer Powers approached the driver's side of the vehicle and spoke with Defendant, who was sitting in the driver's seat. At the same time, Officer Harris approached the passenger side of the vehicle to speak with the two female passengers. Immediately upon reaching the vehicle, Officer Powers asked Defendant whether he had any weapons or drugs in the car. Defendant responded that he had a gun under his seat and began to retrieve it. Officer Powers told Defendant not to get the gun and asked him to step out of the car. After Defendant exited the car, Officer Powers placed him in handcuffs. Officer Powers then pulled a black bag from underneath the driver's seat. Officer Powers opened the bag and found that it contained a .45 caliber handgun. Officer Powers also opened a small brown eyeglass case that was in the black bag and discovered used syringes. Officer Powers asked Defendant if he had a medical condition requiring him to have syringes. Defendant indicated that he did not.

Officer Powers then placed Defendant under arrest. In searching Defendant incident to arrest, Officer Powers found a small bag of methamphetamine and clean syringes.

¶ 5 Meanwhile, while speaking with the two female passengers, Officer Harris discovered that one of the women had several outstanding warrants. Accordingly, Officer Harris placed the woman under arrest and searched her, finding a crack cocaine rock and a pipe containing crack cocaine. The pipe appeared to have been recently used as it had "fresh burn markings." The officers also thwarted an attempt by the other female passenger to swallow drugs.

¶ 6 Defendant was subsequently charged with possession of a controlled substance, possession of a firearm by a restricted person, and possession of drug paraphernalia. Defendant filed a motion to suppress, arguing that the investigating police officer did not have reasonable suspicion to detain Defendant and search his vehicle for weapons. Specifically, Defendant argued that the informant was unreliable as she was anonymous and lacked the ability to distinguish between individuals "smoking drugs" and individuals smoking legal tobacco. Defendant also presented testimony from a drug expert, who testified that cocaine, even when heated or vaporized, has no odor. The district court denied Defendant's motion, finding that Officer Powers's actions were reasonable. Defendant subsequently entered a conditional guilty plea to a charge of possession of a controlled substance, contingent on his right to appeal the district court's decision denying his motion to suppress.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Defendant argues that the district court erred in denying his motion to suppress. We review a trial court's decision to deny a defendant's motion to suppress for correctness. See State v. Richards, 2009 UT App 397, ¶ 7, 224 P.3d 733. Further, we give the trial court's application of the law to the facts no deference in search and seizure cases. See State v. Brake, 2004 UT 95, ¶ 15, 103 P.3d 699.

## ANALYSIS

¶ 8 In appealing the district court's decision to deny his motion to suppress, Defendant argues that the Utah Constitution provides greater protection against police invasion of an individual's privacy than the Fourth Amendment to the federal constitution, suggesting that we should apply a higher degree of scrutiny under our own constitution when reviewing the investigating officers' actions in this case. While we acknowledge that "choosing to give the Utah Constitution a somewhat different construction may prove to be an appropriate method for insulating this state's citizens from the vagaries of inconsistent interpretations given to the fourth amendment by the federal courts," *State v. Watts*, 750 P.2d 1219, 1221 n. 8 (Utah 1988), Defendant has not convinced us that deviating from the federal standard is appropriate in this case.

¶ 9 While Defendant cites to cases in which our courts have held that the Utah Constitution provides greater protection against police intrusion, he merely refers to these cases for the general propositions of law they contain. Defendant does not directly apply the general propositions to the facts of this case and, thus, fails to explain "how the court's analysis under the state constitution would differ from its consideration under the federal constitution," *State v. Van Dyke*, 2009 UT App 369, ¶ 17 n. 4, 223 P.3d 465, *cert. denied*, 230 P.3d 127 (Utah 2010). Moreover, when specifically analyzing the facts of this case, Defendant cites only to cases interpreting the Fourth Amendment to the federal constitution. Therefore, "[i]n the absence of a separate and distinct argument under the Utah Constitution, we consider Defendant's claims only under the Federal Constitution." *State v. Despain*, 2007 UT App 367, ¶ 12, 173 P.3d 213.

¶ 10 Defendant contends that the information available to the investigating officer was insufficient to give rise to reasonable suspicion—much less probable cause—that a crime had occurred. Accordingly, Defendant argues, the district court erroneously admitted all evidence flowing from the investigating officer's detention of Defendant and the accompanying search of Defendant's vehicle. We disagree. We conclude that the information available was sufficient to give the investigating officer reasonable suspicion to briefly detain Defendant and probable cause to search Defendant's vehicle.[1]

### I. The Fourth Amendment

¶ 11 The Fourth Amendment to the United States Constitution protects citizens against "unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, an officer has probable cause justifying an arrest when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Moreover, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

¶ 12 Although an officer may not arrest an individual absent probable cause, an officer may stop and briefly detain an individual if the officer has "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citation and internal quotation marks omitted). When determining whether reasonable suspicion exists, "reviewing courts . . . must look at the 'totality of the circum-

---

1. Because analysis of Officer Powers's detention of Defendant pursuant to reasonable suspicion and analysis of the search of the vehicle pursuant to probable cause are both legally similar, though not identical, and involve the same facts, our analysis overlaps to some degree. *See Kaysville City v. Mulcahy*, 943 P.2d 231, 234 (Utah Ct.App.) ("Although the necessary degree of suspicion is lower than that necessary for probable cause . . . 'the same totality of facts and circumstances approach is used to determine if there are sufficient "specific and articulable facts" to support reasonable suspicion.' ") (citation omitted), *cert. denied*, 953 P.2d 449 (Utah 1997).

stances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Id.* (citation omitted). The Supreme Court has indicated that "[t]his process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (citation omitted).

¶ 13 We also note that while a warrant is generally required before an officer may conduct a search, an officer may search a vehicle without a warrant if the vehicle is "readily mobile and probable cause exists to believe [the vehicle] contains contraband." *Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (per curiam) (noting also that "the automobile exception does not have a separate exigency requirement"). Probable cause to search a vehicle requires only "'a belief, reasonably arising out of the circumstances known to the seizing officer, that an automobile ... contains that which by law is subject to seizure and destruction.'" *State v. Dorsey,* 731 P.2d 1085, 1088 (Utah 1986) (quoting *Carroll v. United States,* 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). Indeed,

> probable cause is a flexible, common-sense standard.... A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.... "[T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

*Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (citations omitted). Finally, we note that "[t]he validity of the probable cause determination is made from the objective standpoint of a 'prudent, reasonable, cautious police officer ... guided by his experience and training.'" *Dorsey,* 731 P.2d at 1088 (omission in original) (citation omitted).

## II. Reasonable Suspicion and Probable Cause

¶ 14 Whether reasonable suspicion or probable cause exists depends on the qual-ity and quantity of the information available to the investigating officer. This information may come from external sources, such as an informant's tip, *see Salt Lake City v. Street,* 2011 UT App 111, ¶ 7, 251 P.3d 862, or the officer's own observations, including his or her sense of smell, *see State v. Wright,* 1999 UT App 86, ¶ 9, 977 P.2d 505. Here, the only information available to Officer Powers as he approached Defendant's automobile was the informant's tip and the officer's own observations, which consisted primarily of the detection of a "cat urine" odor that the officer associated with burning crack cocaine. We conclude that this information was sufficient to give Officer Powers reasonable suspicion that criminal activity was afoot, and although this information did not provide immediate probable cause to arrest Defendant, it did provide probable cause to believe that the vehicle contained contraband and should be searched. We first consider the informant's tip.

### A. Informant's Tip

¶ 15 Our Supreme Court has declined to adopt a "rigidly exact[ing]" standard in assessing an informant's tip and instead undertakes a "flexible, common sense test" with a view toward the "totality of the facts and circumstances." *State v. Saddler,* 2004 UT 105, ¶¶ 10–27, 104 P.3d 1265. Accordingly, in determining whether an informant's tip is sufficiently reliable to support a reasonable suspicion or probable cause determination, the Utah Supreme Court has indicated that we are to look to "[t]he indicia of veracity, reliability, and basis of knowledge" as "nonexclusive elements to be evaluated in reaching the practical, common-sense decision whether, given all the circumstances," reasonable suspicion or probable cause exists. *Id.* ¶ 11 (citations and internal quotation marks omitted).

¶ 16 Defendant argues that the informant in this case was an anonymous tipster and, therefore, that the informant's tip was not sufficiently reliable. We recognize that where an informant is anonymous, reliability is low; however, where an informant is an identified, disinterested "citizen-informant," reliability is high. *See Street,*

2011 UT App 111, ¶ 10, 251 P.3d 862. We disagree that the tipster here was anonymous. The tipster gave her first name—Stacy—to police dispatch. She also reported that a small, green car was parked behind her residence and gave a specific address where the car could be found. Thus, while police may not have had her full name and exact address, they knew her first name and the building in which she lived. Moreover, Stacy indicated that she had previously aided the Weber–Morgan Narcotics Strike Force. Accordingly, there was sufficient identification and contact information available that the police could likely have contacted Stacy if necessary. *See id.* ¶ 11; *Salt Lake City v. Bench*, 2008 UT App 30, ¶ 15, 177 P.3d 655 (indicating that a citizen-informant is reliable where that person is "exposed to possible criminal and civil prosecution if the report is false") (citation and internal quotation marks omitted), *cert. denied*, 199 P.3d 367 (Utah 2008). Accordingly, Stacy, while not fully identified, was not an anonymous tipster as Defendant claims; rather, she was much closer to being a disinterested "citizen-informant" and, hence, more reliable. *See Street*, 2011 UT App 111, ¶¶ 10–11, 251 P.3d 862.

◼ ¶ 17 While we conclude that the informant here was not anonymous, we also consider whether she had a sufficient basis of knowledge for reporting that the individuals parked in the green car behind her building were "smoking drugs." *See Saddler*, 2004 UT 105, ¶ 11, 104 P.3d 1265. We have observed that "[m]embers of the general public have a common knowledge about whether a person is under the influence of alcohol." *Street*, 2011 UT App 111, ¶ 13, 251 P.3d 862 (citation and internal quotation marks omitted). Thus, a citizen-informant's tip about a drunk driver is sufficient to give the police

reasonable suspicion that the individual is engaged in criminal behavior, i.e., driving under the influence, even if the basis for the informant's conclusion is not fully explained. *See id.* However, whether a person is "smoking drugs" does not seem to fall within the realm of knowledge common to members of the public, unlike the ability to recognize the behavior or driving pattern of someone who is intoxicated. Indeed, we agree with Defendant that the act of smoking legal tobacco and the act of smoking illegal drugs may appear very similar to the uninitiated and that the two acts would not likely be distinguishable by an untrained or inexperienced observer. While the informant indicated that she could smell the odor of the substance the individuals were smoking, we have no indication in the record as to why she believed that the odor she detected was burning drugs as opposed to incense or any other substance. It may well be that Stacy did have experience with identifying the odor of burning narcotics, as she indicated that she had previously worked with the Weber–Morgan Narcotics Strike Force. Nevertheless, we simply do not have enough information before us to determine whether the informant had a sufficient basis of knowledge for concluding that the occupants of the car were "smoking drugs." Accordingly, we are unable to conclude that the informant's tip, by itself, supported a reasonable suspicion or probable cause determination.[2] *See id.* Thus, we turn our attention to whether the observations of the investigating officer were sufficient to support reasonable suspicion and probable cause.

### B. Detection of "Cat Urine" Odor

◼ ¶ 18 Our courts have recognized that probable cause and, by extension, reasonable suspicion "may arise from an officer's sense

---

2. We note that the police officers corroborated some details of the informant's tip as they approached the small, green car. *See generally Salt Lake City v. Street*, 2011 UT App 111, ¶ 14, 251 P.3d 862 (noting that police corroboration of an informant's tip can strengthen the reliability of the tipster). Specifically, the officers discovered, as the informant had reported, a small, green car containing three occupants. The officers did not, however, observe any of the three individuals smoking or otherwise acting suspiciously. The only circumstance that indicated illegal behavior

was the smell the officers detected as they approached the vehicle. Presumably, this same smell is what prompted Stacy to indicate that she could smell that the occupants of the car were "smoking drugs." As we have no basis to conclude that Stacy was "qualified to know" the smell of drugs, *see Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948), our analysis regarding the odor hinges on whether Officer Powers could reliably identify the smell. *See State v. Wright*, 1999 UT App 86, ¶ 9, 977 P.2d 505.

of smell." *Wright,* 1999 UT App 86, ¶ 9, 977 P.2d 505 (citations and internal quotation marks omitted). Indeed, when an officer detects the odor of marijuana, probable cause—not merely reasonable suspicion—may exist. *See id.* ("It is well settled that the odor of marijuana emanating from a vehicle establishes probable cause for the warrantless search of that vehicle.") (citation and internal quotation marks omitted). Utah courts have also recognized that other odors can lead to a probable cause determination. *See, e.g., State v. Bartley,* 784 P.2d 1231, 1235 (Utah Ct.App.1989) (noting that the odor of "drip gas" coming from an automobile was key in establishing probable cause to justify a warrantless search of a truck). Courts in other jurisdictions have likewise concluded that the odor of drugs is sufficient to establish probable cause. *See, e.g., Johnson v. United States,* 333 U.S. 10, 12–16, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (holding that the smell of burning opium was sufficient to establish probable cause); *United States v. West,* 219 F.3d 1171, 1179 (10th Cir.2000) (holding that an officer had probable cause to search bags in the trunk of the car when he opened the trunk and smelled a strong odor of methamphetamine); *Minnick v. United States,* 607 A.2d 519, 525 (D.C.App.1992) (holding that a smell associated with PCP was enough to establish probable cause).

■ ¶ 19 Whether an officer's detection of an odor that the officer identifies as cocaine is sufficient to constitute probable cause (or reasonable suspicion) requires careful analysis because cocaine in its pure form, as the expert in this case testified, is odorless. *See United States v. Cruz–Roman,* 312 F.Supp.2d 1355, 1358 (W.D.Wash.2004) (finding that because cocaine in its pure form is odorless, investigating officers could not have smelled cocaine outside of a hotel room). This fact has led some courts to conclude that a claimed cocaine odor cannot support a probable cause determination. *See, e.g., id.* at 1363. However, although cocaine in its pure form does not produce a detectable odor when heated or burned, because crack cocaine is mixed with other substances that may give off odors when burned, we conclude that an officer's detection of a distinctive odor associated with impure cocaine may be sufficient to support a probable cause determination. *See, e.g., United States v. Benevento,* 649 F.Supp. 1379, 1386–87 (S.D.N.Y. 1986) (holding officer had probable cause after detecting an odor associated with cocaine because of officer's experience from prior cocaine seizures), *rev'd in part on other grounds by* 836 F.2d 60 (2d Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988); *State v. Harrison,* 287 Wis.2d 133, 703 N.W.2d 383U, 2005 WL 1577441, *2 (Wisc.Ct.App.2005) (holding that because of officer's experience, detection of the smell of "cocaine smoke" reliably supported a probable cause determination). *See also People v. Darby,* 263 A.D.2d 112, 113–14, 701 N.Y.S.2d 395 (N.Y.App.Div.) (holding that although PCP has no odor, because street-level PCP is mixed with other substances that have a distinct odor, an officer's recognition of that odor was sufficient to establish probable cause), *cert. denied,* 95 N.Y.2d 795, 711 N.Y.S.2d 163, 733 N.E.2d 235 (2000).

■ ¶ 20 Key to determining whether detection of an odor can support a reasonable suspicion or probable cause determination is whether the individual detecting the odor can reliably identify the odor in question. Indeed, the United State Supreme Court has held that

> [i]f the presence of odors is testified to before a magistrate and he finds the affiant *qualified to know* the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient [to support a probable cause determination].... Indeed it might very well be found to be evidence of the most persuasive character.

*Johnson,* 333 U.S. at 13, 68 S.Ct. 367 (emphasis added).

■ ¶ 21 Our courts have likewise held that an officer's experience is key to determining whether a smell can support a probable cause determination. Indeed, in *State v. Wright,* 1999 UT App 86, 977 P.2d 505, this court held that "a court may consider an officer's particular experience and education in determining whether probable cause exists.... For instance, an officer's special fa-

miliarity with how controlled substances smell is germane to evaluating whether an officer had probable cause to search and seize." *Id.* ¶ 9 (citation omitted). *See also State v. Spurgeon*, 904 P.2d 220, 227 (Utah Ct.App.1995) ("[P]robable cause ... may arise from an officer's sense of smell.") (citation and internal quotation marks omitted). Accordingly, while probable cause and reasonable suspicion are objective determinations, courts may recognize an officer's "specific experience and training," including "an officer's specialized knowledge of the appearance or odor of controlled substances," when evaluating probable cause. *Id.* at 226.

¶ 22 Therefore, the question here is whether Officer Powers's experience was sufficient that he was qualified to recognize the "cat urine" odor as an odor distinctly associated with burning crack cocaine. We conclude that it was.[3]

¶ 23 Defendant argues that the officer's assertion that he smelled the odor of burning cocaine as he approached the car is insufficient to support a determination that reasonable suspicion—much less probable cause—existed. Specifically, Defendant contends that Officer Powers has never been trained as a drug recognition expert and that because cocaine is odorless, as Defendant's expert testified at the suppression hearing, the "cat urine" odor referred to by the officer could have been just that—actual cat urine. We reject these arguments.

¶ 24 First, Defendant overstates the importance of his expert's testimony. Specifically, while Defendant's expert indicated that cocaine has no "particular kind of smell that you can identify," his experience came primarily from handling cocaine powder in its pure form in laboratory testing. Moreover, the expert acknowledged that he had only heated crack cocaine to the point of vaporization "a number of times," and whenever he did heat cocaine, the fumes did "[n]ot [rise] significantly into [his] face." Additionally, the expert acknowledged that cocaine is often mixed with other substances that may give off an odor when heated. This appears to be particularly true of crack cocaine, which is "produced by dissolving powdered cocaine in a mixture of water and ammonia or sodium bicarbonate (baking soda)," National Drug Intelligence Center, Crack Cocaine Fast Facts: Questions and Answers (2003), *available at* http://www.justice.gov/ndic/pubs3/3978/3978p.pdf. Finally, the expert noted that while he had never likened the smell of cocaine to cat urine, he had read that other individuals had associated the odor of a drug mixed with ammonia with the odor of cat urine.

¶ 25 Second, Defendant minimizes Officer Powers's experience as a police officer. In his duties as a patrolman, Officer Powers regularly encounters drug use. Although Officer Powers had not been formally trained to recognize the smell of crack cocaine,[4] he testified that during the more than a year and a half that he had been a patrolman, he encountered drug activity "almost on a daily basis." Officer Powers further testified that he was familiar with the odor of burning crack cocaine and that to him it smelled like cat urine. Indeed, Officer Powers indicated that the cat urine odor has such a distinctive smell that each time he had detected this odor while on patrol, he found crack cocaine to be present.[5]

---

**3.** Contrary to Defendant's argument that there is no *objective* basis upon which reasonable suspicion and probable cause determinations could be made in this case, our courts have specifically indicated that although an officer's "subjective beliefs, no matter how sincere" cannot, standing alone, support a reasonable suspicion or probable cause determination, an "officer's specific experience ... is relevant in determining whether [an] officer had probable cause to arrest." *State v. Spurgeon*, 904 P.2d 220, 226 (Utah Ct. App.1995).

**4.** Defendant makes much of the fact that Officer Powers had not been formally trained as a Drug

Recognition Expert (DRE). Whether Officer Powers had been certified as a DRE is irrelevant to whether he was "qualified to know" that the cat urine odor is suggestive of crack cocaine. DREs are not trained to identify drugs; rather, they are trained to "detect and apprehend drug impaired drivers." Utah Dep't of Public Safety, Drug Recognition Expert, http://publicsafety.utah.gov/highwaypatrol/programs/dre.html (last visited September 6, 2011).

**5.** We also note that Officer Powers's partner, Officer Harris, testified that she, too, identified the odor emanating from Defendant's vehicle as a burning narcotic based on her experience in

¶ 26 Therefore, because Defendant's expert primarily dealt with cocaine in its pure form and acknowledged that street-level cocaine is frequently mixed with substances that may give off an odor when heated, his testimony was not dispositive. Given Officer Powers's experience, which led him to conclude that the cat urine odor he detected was distinctive of burning crack cocaine, we conclude that Officer Powers proceeded to detain and question Defendant based on more than a mere hunch. *See State v. Richards*, 2009 UT App 397, ¶¶ 9, 10 n. 5, 224 P.3d 733. Further, despite Defendant's argument that the cat urine odor emanating from Defendant's vehicle could have been actual cat urine, an officer's reasonable suspicion determination does not require him to rule out an innocent explanation for the information known to the officer. *See id.* ¶ 12. This is particularly true because we "accord deference to an officer's ability to distinguish between innocent and suspicious" facts. *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir.2001), *cert. denied*, 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002). In sum, given Officer Powers's experience, which was bolstered by the testimony of his partner, Officer Harris, it was an objectively reasonable inference for Officer Powers to conclude that criminal activity, i.e., use of a controlled substance, was afoot inside the small, green car. *See Richards*, 2009 UT App 397, ¶ 10, 224 P.3d 733. Accordingly, Officer Powers had reasonable suspicion to detain Defendant to investigate his suspicion.

¶ 27 While Officer Powers had authority to briefly detain Defendant, we conclude that he did not initially have probable cause to arrest him. *See State v. Prows*, 2007 UT App 409, ¶ 11, 178 P.3d 908 (noting that "the required level of suspicion [to justify a stop] is lower than the standard required for probable cause to arrest") (citation and internal quotation marks omitted). As mentioned above, probable cause to arrest requires that the officer know of facts that would permit a reasonably prudent person to infer that the suspect has committed or is committing a crime. *See State v. Trane*, 2002 UT 97, ¶ 27, 57 P.3d 1052. Here, although the officer had reasonable suspicion that criminal activity was afoot, he did not observe Defendant committing any crime. Moreover, Officer Powers could not identify from the odor which of the vehicle's occupants had used or was currently using crack cocaine. Additionally, Officer Powers observed no other suspicious behavior as he approached Defendant's automobile. Accordingly, we conclude that, as he approached the car, Officer Powers did not "know[ ] of sufficient facts to believe [Defendant, as opposed to one of the other passengers in the vehicle, had] committed" or was committing a crime. *Id.* ¶ 28.

¶ 28 Nevertheless, although Officer Powers did not initially have probable cause to arrest Defendant, he did have probable cause to believe that the vehicle contained contraband. *See State v. Spurgeon*, 904 P.2d 220, 227 (Utah Ct.App.1995) ("Probable cause to arrest and probable cause to search are distinct legal concepts."). As mentioned above, Officer Powers concluded that the smell emanating from Defendant's vehicle was burning crack cocaine. While Defendant argues that the odor detected by Officer Powers was insufficiently reliable because cocaine, in its pure form, has no smell, Defendant's expert conceded that cocaine is often mixed with other substances that may give off an odor. This is true, as noted, of crack cocaine, which Officer Powers was able to recognize from its distinctive odor based on his experience of dealing with drugs "almost on a daily basis" as a patrolman. Indeed, Officer Powers's conclusion about the nature of the odor he detected was more than a mere suspicion, as he explained that each time he had detected the cat urine odor previously, he found cocaine to be present. *See id.* at 226 ("Probable cause is more than suspicion but less than certainty.") Accordingly, we conclude that Officer Powers reached a "rationally based conclusion of probability," *id.* at 226–27, that the vehicle contained contraband "subject to seizure and

responding to numerous calls where narcotics had been present. Indeed, Officer Harris testified that during her nearly four years of experience as a police officer, in "no other common day-to-day setting ha[d she] ever smelled that chemical odor except when it's associated with narcotic use."

destruction," *State v. Dorsey,* 731 P.2d 1085, 1088 (Utah 1986). Therefore, we conclude that in this case, Officer Powers had probable cause to search the vehicle based on the distinctive odor he smelled. *See Spurgeon,* 904 P.2d at 227.

### III. Authority To Detain Defendant and To Search Defendant's Vehicle

¶ 29 Prior to Officer Powers's search of the vehicle, Defendant was unquestionably detained. *See State v. Van Dyke,* 2009 UT App 369, ¶ 20 n. 8, 223 P.3d 465 (explaining that a level one encounter becomes a level two detention when a person "no longer believes he is free to leave"). Nevertheless, this seizure was constitutional because the officer had reasonable suspicion to detain Defendant for a brief investigation.[6]

¶ 30 Because there was probable cause to believe that the vehicle contained contraband, i.e., crack cocaine, Officer Powers had authority to "search [the] automobile *and the containers within it,*" *California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (emphasis added). Accordingly, Officer Powers could open the black bag under Defendant's seat *and* the eyeglass case within the bag.[7] *See id.* As a

result, Officer Powers's discovery of the used syringes in the eyeglass case did not come at the expense of Defendant's constitutional rights, as Defendant contends. Once Officer Powers asked Defendant if he had a medical need for the syringes and Defendant admitted that he did not, Officer Powers then had probable cause to believe that Defendant had committed a crime in his presence, i.e., possession of drug paraphernalia,[8] *see* Utah Code Ann. § 58–37a–5(1) (Supp.2011); *id.* § 58–37a–3 (defining "drug paraphernalia" as, among other things, any equipment used or intended for use to inject a controlled substance); *State v. Trane,* 2002 UT 97, ¶ 28, 57 P.3d 1052. After probable cause to arrest existed, Officer Powers could then search Defendant incident to arrest. *See State v. Talbot,* 2010 UT App 352, ¶ 9, 246 P.3d 112. Thus, Officer Powers's discovery of the additional syringes and small bag of methamphetamine found on Defendant was constitutional. *See id.* ¶ 19. Accordingly, we cannot say that the district court erred in denying Defendant's motion to suppress.

### CONCLUSION

¶ 31 While the informant's tip was insufficient to support a reasonable suspicion or

---

6. Defendant also argues that he was placed under arrest, not merely detained, while Officer Powers searched his car. To the extent that Defendant contends that his detention escalated from a level two investigatory stop to a level three arrest once Officer Powers placed him in handcuffs, we conclude that this claim is inadequately briefed because Defendant cites to no case in support of this claim.

   Moreover, our courts have held that a police officer may place a suspect in handcuffs while carrying out a lawful search to ensure an officer's safety. *See State v. Banks,* 720 P.2d 1380, 1383 (Utah 1986) (holding that handcuffing an individual present in a home during the execution of a search warrant was permissible for officers to "[e]nsure the officers' safety" during the search) (citing *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *State v. Marquez,* 2007 UT App 170, ¶ 13, 163 P.3d 687 (holding that "it was reasonable under the Fourth Amendment for [the investigating officer] to frisk [the suspect] after placing him in handcuffs" for safety reasons). Here, as mentioned above, Officer Powers had probable cause to effectuate a warrantless search of Defendant's vehicle. Accordingly, he had authority to "neutralize the threat of harm" while he conducted the search. *See Terry,* 392 U.S. at 30, 88 S.Ct. 1868. Defendant admitted to having a gun ac-

cessible while in the vehicle. Further, although Defendant had been handcuffed and removed from the location of the gun, Officer Powers would inevitably have to turn his back to Defendant while leaning into the vehicle, placing himself in a vulnerable position. *Cf. Marquez,* 2007 UT App 170, ¶ 13, 163 P.3d 687 (explaining that even handcuffing a suspect does "not entirely eliminate the risk of harm"). Therefore, under these circumstances, the officer was justified in placing Defendant in handcuffs to ensure his own safety while he searched Defendant's vehicle. *See Banks,* 720 P.2d at 1383.

7. We note that Officer Powers's primary concern when initiating the search of Defendant's car appears to have been locating the gun Defendant admitted to having. While this may be so, this does not negate the fact that from an objective standpoint, the information available to Officer Powers supported a determination that probable cause to search the vehicle for contraband existed.

8. Indeed, Defendant was originally charged with possession of drug paraphernalia, among other things, but that charge was later dropped after he agreed to plead guilty to a charge of possession of a controlled substance.

probable cause determination, the cat urine odor detected by Officer Powers as he approached the vehicle was sufficient to give him reasonable suspicion that criminal activity, i.e., illegal drug use, was afoot inside Defendant's vehicle. Additionally, while the smell did not provide immediate probable cause to arrest Defendant because it was unclear which of the occupants of the vehicle possessed the controlled substance, it did establish probable cause to believe that the vehicle contained contraband, i.e., a controlled substance in the form of crack cocaine. Accordingly, Officer Powers was justified in detaining Defendant briefly and in searching Defendant's car, including the containers found in it. Given what he found and learned, he then had probable cause to arrest Defendant. All evidence flowing from Officer Powers's detention of Defendant and search of his vehicle was, therefore, obtained constitutionally. Thus, the district court did not err in denying Defendant's motion to suppress.

¶ 32 Affirmed.

¶ 33 WE CONCUR: STEPHEN L. ROTH, Judge and MICHELE M. CHRISTIANSEN, Judge.