2014 UT App 284

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
BRENT MICHAEL WELKER,
Defendant and Appellant.

Memorandum Decision
No. 20131063-CA
Filed December 4, 2014

Third District Court, Salt Lake Department
The Honorable Elizabeth A. Hruby-Mills
No. 125900439

Joshua C. Snow, Attorney for Appellant

Simarjit S. Gill and Dawn W. Emery, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and JOHN A. PEARCE
concurred.

DAVIS, Judge:

¶1　Brent Michael Welker appeals from his conditional guilty plea to driving under the influence (DUI). *See State v. Sery*, 758 P.2d 935, 938–39 (Utah Ct. App. 1988) (permitting a defendant to enter a conditional guilty plea to preserve a suppression issue for appeal). We affirm.

¶2　Welker challenges the district court's denial of his motion to suppress and its ruling that the police officer had reasonable

suspicion to stop his vehicle.[1] A stop is justified "when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *State v. Alverez*, 2006 UT 61, ¶ 14, 147 P.3d 425 (citations and internal quotation marks omitted). "It is well-established in this state that the articulable facts supporting reasonable suspicion may come from an officer's own observations as well as external information such as an informant's tip via police dispatch . . . ." *State v. Kohl*, 2000 UT 35, ¶ 13, 999 P.2d 7 (emphasis omitted). We review the district court's ruling for correctness. *State v. Markland*, 2005 UT 26, ¶ 8, 112 P.3d 507.

¶3     Here, the officer that stopped Welker's vehicle testified at the hearing on Welker's motion to suppress and explained that dispatch had received a call from a woman in an apartment complex reporting a suspicious person in a vehicle that she believed may have been trying to enter a carport of a vacant "apartment or was burglarizing [the caller's] apartment and possibly trying to steal a trailer." According to the officer, the caller indicated that the suspicious person also "had a flashlight and was looking in the windows" of a vacant apartment. The officer testified that the caller identified herself by name and provided dispatch with her contact information. The officer stated that the caller described the suspicious person as driving a loud diesel truck that was gray and white or red and gray and had a camper shell on the back. He testified that he stopped a red and gray truck with a camper shell as it was leaving the caller's cul-de-sac. Upon stopping the vehicle, the officer observed signs that the driver, Welker, was impaired, prompting the officer to conduct a DUI investigation and ultimately arrest Welker.

¶4     The district court ruled that "the initial tip came from an identified citizen informed with a high degree of reliability" and

---

1. We reject the State's argument that Welker has not properly marshaled the evidence. *See State v. Nielsen*, 2014 UT 10, ¶¶ 33–44, 326 P.3d 645 (explaining marshaling).

that the caller's reliability was bolstered by the level of detail she provided, which was then corroborated by the officer. *See State v. Lloyd*, 2011 UT App 323, ¶ 15, 263 P.3d 557 ("[I]n determining whether an informant's tip is sufficiently reliable to support a reasonable suspicion or probable cause determination, the Utah Supreme Court has indicated that we are to look to '[t]he indicia of veracity, reliability, and basis of knowledge' as 'nonexclusive elements to be evaluated in reaching the practical, common-sense decision whether, given all the circumstances,' reasonable suspicion or probable cause exists." (second alteration in original) (quoting *State v. Saddler*, 2004 UT 105, ¶ 11, 104 P.3d 1265)). The court concluded that the caller's reliability in conjunction with the caller's belief that someone appeared to be stealing her trailer gave law enforcement "reasonable articulable suspicion of criminal activity to justify the stop."

¶5     Welker argues that the officer lacked reasonable suspicion because the officer "did not testify about any specific" conduct "that could be considered criminal," that he did not receive a report that any crime had actually occurred, and that he did not independently observe Welker commit any traffic violations. Additionally, Welker notes, the caller merely "offered her own speculation that the occupants of the vehicle might be trying to steal her trailer" and that the caller did not indicate how close the truck came to the trailer, whether there was a tow hitch attached to the truck, or whether anyone exited the truck to attempt to connect the trailer to the truck. However, under the reasonable suspicion standard, the responding police officer is not faulted "for not connecting his own testimonial dots" by indicating "what crime he suspected had been committed or how [the defendant] was connected to that crime." *Markland*, 2005 UT 26, ¶ 19. "[S]uch rigid formalities" are not required and "impose[] something akin to a preponderance of the evidence standard," which the "United States Supreme Court has made . . . clear . . . is inappropriate in the investigatory detention context." *Id.* ¶¶ 18–19 (citing *United States v. Arvizu*, 534 U.S. 266, 277 (2002)). Rather, "[a]s long as the underlying facts, and reasonable inferences drawn from those facts,

justify the conclusion that reasonable suspicion existed at the inception of a level-two stop, the Fourth Amendment is satisfied." *Id.* ¶ 19. *See generally id.* ¶ 10 n.1 (describing the three permissible levels of police stops).

¶6 Welker compares his case to *State v. Carpena*, 714 P.2d 674 (Utah 1986) (per curiam). There, our supreme court determined that an officer did not possess sufficient reasonable suspicion that the occupants of "a car with out-of-state license plates [that] was moving slowly through a neighborhood late at night . . . were involved in criminal activity" even though "a rash of burglaries had recently occurred" in that neighborhood. *Id.* at 675. Welker contends that he was stopped based on similarly innocuous information—"that there was a vehicle in the complainant's neighborhood that appeared to not belong there."

¶7 We disagree. This case is more like *State v. Markland*, 2005 UT 26, 112 P.3d 507. There, a police officer responded to a call that someone was crying out for help near an apartment complex. *Id.* ¶ 2. The officer proceeded down a poorly-lit dead-end street next to the complex, where he encountered the defendant. *Id.* The defendant informed the officer that he was walking to his home, which was about twenty blocks away. *Id.* ¶ 3. Knowing that the defendant was proceeding down a dead-end street, the officer's suspicion was raised, prompting the officer "to momentarily detain the individual in order to run checks that could potentially provide information relevant to his investigation into the cries for help, as well as information relevant to [the officer's] own safety." *Id.* ¶¶ 2, 21. Our supreme court concluded that "viewing the facts in their totality and considering the rational inferences drawn from those facts, [the officer's] detention of [the defendant] . . . was justified at its inception by a reasonable suspicion that crime was afoot and that [the defendant] was connected to that crime." *Id.* ¶ 21.

¶8 Like the defendant in *Markland*, Welker was stopped late at night in an area in which the officer was investigating "a

contemporaneous report of suspicious circumstances." *See id.* ¶ 25. The officer here had more information than the mere presence of an unfamiliar vehicle in the complainant's neighborhood—the caller had reported suspicious and potentially criminal activity and described the activity as involving a vehicle that matched the one the officer stopped. In Welker's own words, the officer responded to the call received by dispatch "immediately." The vehicle the officer stopped was the only vehicle in the area and was the only vehicle leaving the caller's apartment complex at the time the officer stopped it. Accordingly, we affirm the district court's ruling denying Welker's motion to suppress because the officer had reasonable suspicion sufficient to justify stopping Welker.

———